# FRANKLIN PARMELEE *et al.*

## · *v.*

# DANIEL LAWRENCE.

1. INTEREST—*recovery upon usurious contract under act of* 1867. The interest law of February 28, 1867, directs that in cases arising upon contracts entered into while the law of 1849 was in force, and before the law of 1857 was passed, the penalty for usury shall be a forfeiture of the excess of interest above what the parties might have lawfully contracted for, and no more.

2. So in a suit to foreclose a mortgage given to secure a loan of money, under a contract entered into in September, 1856,—that is, while the interest law of 1849 was in force, and before the law of 1857 was passed—in which interest was reserved at the rate of twelve per cent. per annum, the mortgagee may recover, under the act of 1867, interest at the rate of ten per cent. per annum, that being the rate for which the parties might have lawfully contracted at the time the contract was made.

3. This is the proper and legal effect of the act of 1867, notwithstanding it operates to take away a portion of the penalty for reserving usurious interest, prescribed by the law as it existed at the time the contract was entered into.

4. And the act of 1867 is not confined in its operation in that regard, to contracts upon which suits might be brought after its passage, but applies also to contracts concerning which suits might have been pending and undetermined at the time it was passed.

5. SAME—*effect of the act of* 1869. The act of March 27, 1869, by which it is provided that the act of 1867 shall not be construed to apply to any suit pending at the time of its passage, cannot operate to change the rights of the parties in the appellate court on an appeal from a decree which was rendered in the court below before the act of 1869 was passed.

6. CONSTITUTIONALITY *of the act of* 1867—*of vested rights.* The act of 1867, as above construed, is not in violation of the rule of the constitution which secures vested rights against legislative interference, for the law recognizes no vested right in penalties.

7. SAME—*of violating the obligation of contracts.* Nor does that act violate the obligation of a contract. It simply reduces the penalty for usury, as prescribed by the law as it existed at the time the contract was made, and permits it to be enforced to the extent that it was lawful at that time.

8. The principle, that the laws in force when a contract was made enter into it, and show what was its legal obligation, does not mean that parties acquire by their contracts a vested right in existing remedies or existing penalties.

332        PARMELEE *et al. v.* LAWRENCE.        [Sept. T.,

Statement of the case.  Brief for the appellants.

9. SAME—*exercise of judicial power by the legislature.* The act of 1867 is not obnoxious to the objection that the legislature thereby assumed to exercise a judicial power.  The act merely lays down a general rule to govern all contracts made during a certain period, and was the exercise of a strictly legislative power.

10.  INTEREST—*whether it depends solely upon the statute.* It is not conceded that, in the absence of all statutory law in regard to interest, a contract for the payment of interest for money borrowed would not be enforced by the courts.

APPEAL from the Superior Court of Chicago.

The facts of this case will be found in the opinion of the court announced at the April term, 1867, in the same case, and reported in 44 Ill. 405.  The decree rendered upon the former hearing in the court below was then reversed and the cause remanded, when, upon a second hearing a decree was rendered in accordance with the opinion of this court.

The true relation between the parties was this : Lawrence loaned to Parmelee, Gage, Johnson and Bigelow, partners, doing business under the name of F. Parmelee & Co., the sum of $50,000, at 12 per cent. per annum interest, and to secure its payment, in five annual installments, the borrowers conveyed to Lawrence certain real estate in the city of Chicago, the latter giving back an instrument in the form of a contract of sale, by the terms and legal effect of which he was to reconvey the premises on the payment of the money—thus creating the relation of mortgagors and mortgagee.

The contract was made on the 15th of September, 1856, and the question now presented, is, what rate of interest should Lawrence, the mortgagee, be allowed, in a proceeding to foreclose his mortgage ?

Messrs. BECKWITH & AYER, for the appellants, Parmelee & Co., contended that, by reason of the usurious character of the contract, under the law governing the rights of the parties, they were entitled to an abatement of the entire

interest reserved, while this court, in their former opinion in the case, held, the mortgagee was entitled to recover interest at the rate of ten per cent., that being the rate which might have been lawfully reserved at the time this contract was made. Counsel ask the court to reconsider that opinion, and present their view of the question as follows:

The appellants, according to the decision of this court, are to be treated as mortgagors, defending a suit by the appellee, as mortgagee, asking a foreclosure of his mortgage; and they set up the defence of usury in their answer, and insist upon the benefit of the laws of this State on that subject, and upon the application of all interest payments heretofore made by them towards the reduction of the principal.

When the loan was made (Sept. 15, 1856,) there were two statutes in force in this State in relation to the rate of interest allowed on contracts. By the statute of 1845, the rate was limited in all cases to six per cent. By a separate and distinct section of that act, all persons were expressly prohibited from accepting or receiving any greater sum for the loan or forbearance of money. And by subsequent sections a penalty of three-fold the amount of the whole interest received was imposed upon any one who should violate the statute.

By the act of 1849, it was enacted that money might be loaned at such rate of interest, not exceeding ten per cent. per annum, as the parties might agree upon. If a higher rate than *six* per cent. should be reserved in any promissory note or writing obligatory, *given for any other consideration than money loaned*, it was provided by this act, that the defendant might plead the fact as a defense, and if the issue should be found in his favor, judgment should be rendered for the principal sum mentioned in the instrument and six per cent. interest thereon.

The effect of this act was to repeal so much of the statute of 1845 as declared a penalty for receiving more than six per cent. on contracts *other* than for money loaned, leaving,

however, that penalty in full force in all cases where more than ten per cent. should be reserved *for money loaned.* This construction of the act has received the express sanction of the Supreme Court, and its decision has been universally acquiesced in by the profession. *Kinsey* v. *Nisley,* 23 Ill. 505.

The same construction has also been recognized by this court in a later opinion filed in the present cause, on appeal taken from the original decree.

Such, then, was the state of the law when the contract in question was made. The statute authorized the parties to agree upon any rate not exceeding ten per cent. Any higher rate was positively forbidden, and a penalty of three-fold the amount of the whole interest reserved, was imposed by the law upon any one who should violate its provisions.

The contract for 12 per cent. interest was not wholly void, but it was invalid *pro tanto,* and cannot be enforced as made.

What, then, is the measure of relief which a court of equity will administer in the case of a creditor seeking to enforce an usurious contract? It is true, where a mortgagor asks relief against an usurious mortgage, he will be required to pay legal interest, on the principle that he who seeks equity must do equity. But where the lender of money, on an usurious contract, resorts to the courts to enforce his securities, a forfeiture of all the interest is the necessary consequence. *Snyder* v. *Griswold,* 37 Ill. 217. See also *Mason* v. *Gardner,* 4 Brown's Ch. Rep. 436; *Fanning* v. *Dunham,* 5 Johns. Ch. 122; *Scott* v. *Nesbit,* 2 Brown's Ch. 641; 1 Story's Eq. Jur. sec. 301; *Dooley* v. *Stipp,* 26 Ill. 86; *Stockham* v. *Munson,* 28 Ill. 51; *Safford* v. *Vail,* 22 Ill. 327.

If the appellee, instead of seeking affirmative relief, were simply defendant to a bill brought to redeem, his claim to interest must, upon the facts of this case, be limited to six per cent.

The legal rate of interest was six per cent., with permission, under the act of 1849, to contract for a rate not exceeding ten

per cent. for borrowed money. But the parties contracted for a rate not allowed by law, twelve per cent. This contract can not be enforced as made, nor can the court make a new contract for the parties, but will leave their rights to be determined by the law,—that is, the legal rate must govern. *Ferguson* v. *Sutphen*, 3 Gilm. 570; *Bishop* v. *Williams*, 18 Ill. 101; *Shirley* v. *Welty*, 19 Ill. 623; *Heacock* v. *Swartwout*, 28 Ill. 291; *Mapps* v. *Sharpe*, 32 Ill. 13; *Sutphen* v. *Cushman*, 35 Ill. 186; *Farwell* v. *Meyer*, 35 Ill. 40; *Woodworth* v. *Huntoon*, 40 Ill. 131. From these cases it must be considered the doctrine of this court, that a mortgagor, seeking to redeem from an usurious mortgage, will be required to pay only the principal sum due, with six per cent. interest. And if these are the hardest terms imposed on a complainant seeking equitable relief in such cases, the court will certainly inflict no harsher terms on a defendant who is asking no relief. But even if the case of *Snyder* v. *Griswold* is no longer to be followed or considered as authority in this State, there is still error in the decree now before the court for review. That decree has allowed the complainant interest at the rate of ten per cent. from the date of the contract, which is four per cent. more than he is entitled to under any rule hitherto recognized by the Supreme Court.

Are the rights and obligations of the parties to this contract at all changed by the passage of the act of February 28, 1867?

That act provides, that in all suits, upon written contracts made while the interest law of 1849 was in force, and prior to the passage of the act of January 31st, 1857, wherein a higher rate of interest than 10 per cent. was reserved, and when the fact of usury is insisted upon in the pleadings and proved, the creditor shall forfeit all the excess of interest above the rate it was competent for the parties to contract for at the time, and no more; and that no portion of the interest which the debtor may have voluntarily paid upon his contract, shall be deducted from the principal.

This suit was pending at the time that act was passed. To give the act operation upon the rights of these parties, is to permit the legislature to assume and exercise judicial functions, which it is not competent for that body to do. Sedgwick on Stat. and Const. Law, 163–7; 1 American Law Register, 28; *Taylor* v. *Porter*, 4 Hill, 140; *Powers* v. *Bergen*, 2 Seld. 366; *Wilkinson* v. *Leland*, 2 Pet. 657; *Conway* v. *Cable*, 37 Ill. 90; *McDaniel* v. *Correll*, 19 Ill. 228; *Marsh* v. *Chestnut*, 14 Ill. 227; *Lane* v. *Dorman*, 3 Scam. 241–3.

This act is invalid, not only because it is not within the rightful attributes of legislative power, but there are also express constitutional restrictions which prohibit all such invasions of private right.

Our State constitution provides, that no person shall be disseized of his freehold, liberties or privileges, or be in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land; and also that no law impairing the obligation of contracts shall ever be made. Similar prohibitions are contained in the constitution of the United States.

Under the first of these clauses, it is secured to these parties that their rights shall be ascertained judicially. It cannot be done by mere legislation. *Taylor* v. *Porter*, 4 Hill, 140; *Lane* v. *Dorman*, 3 Scam. 243; Sedgwick on Stat. and Const. Law, 537–9.

The other clause was specially designed to protect private contracts from legislative encroachments. It includes all con tracts without exception, whether executed or executory. It prohibits all legislation which impairs their obligation.

It has been also held, and is said by the Supreme Court of the United States to be the settled doctrine of that court, " that the laws which subsist at the time and place of making a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. *This principle embraces alike those which affect*

*its validity, construction, discharge and enforcement.*" *Van Hoffman* v. *City of Quincy,* 4 Wal. 550; *Planters' Bank* v. *Sharpe,* 6 How. 327; *Ogden* v. *Saunders,* 12 Wheat. 257; *Green* v. *Biddle,* 8 Wheat. 84; *Sturges* v. *Crowninshield,* 4 Wheat. 137; *Bruce* v. *Schuyler,* 4 Gilm. 275.

It is well settled that a contract wholly void in its inception for usury, cannot be made valid by a repeal of the statute which pronounced it void. And if this be so, it must, we think, be conceded on principle, that if a contract be *partially* void on account of usury, that is, void for the interest, no subsequent legislative enactment, whether it be the repeal of the former statute, or the adoption of a new one on the same subject, can either make the original contract valid, or substitute therefor a new contract to which the parties have never assented. *Morton* v. *Rutherford,* 18 Wis. 298; *Simonton* v. *Vail,* 11 Wis. 90.

So that, in any event, the act of 1867 should not be construed as applying to suits pending at the time of its passage. It should not be given a retrospective operation. *Marsh* v. *Chesnut,* 14 Ill. 227; *Thompson* v. *Alexander,* 11 Ill. 55; *Bruce* v. *Schuyler,* 4 Gilm. 279; *Robinson* v. *Rowan,* 2 Scam. 502; *Garrett* v. *Wiggins,* 1 Scam. 336.

This court has already directed that all interest payments made by the appellants in excess of 10 per cent. should be allowed and deducted from the principal, and the present decree is in conformity with that direction.

The previous decision of this court, as well as numerous authorities from other States, fully sustain the view, that so long as the transaction remains unsettled, the debtor has the right to claim the benefit of all usurious payments.

The only question is as to the extent of that right. We claim that the entire amount paid should be deducted from the principal, and that the complainant is entitled to a decree for the balance only, without interest.

Such was the rule applied in *Booker* v. *Anderson,* 35 Ill. 68.

338          PARMELEE *et al. v.* LAWRENCE.          [Sept. T.,

Opinion of the Court.

It that case, Booker, like the appellee in the present suit, was the complainant in a cross-bill, seeking to enforce a lien on real property, to secure an usurious contract. The court held that all payments of interest, whether for usury or otherwise, should be deducted from the principal sum borrowed.

For further authorities on this question we refer the court to *Woodworth* v. *Huntoon,* 40 Ill. 131 ; *Saylor* v. *Daniels,* 37 Ill. 331; *Farwell* v. *Meyer,* 35 Ill. 40 ; *Mapps* v. *Sharpe,* 32 Ill. 13 ; *Heacock* v. *Swartwout,* 28 Ill. 291 ; *Johnson* v. *Thompson,* 28 Ill. 352 ; *Wood* v. *Lake,* 13 Wis. 84 ; *Gilmore* v. *Woolcock,* 13 Wis. 589 ; *Stanley* v. *Westrop,* 16 Texas, 200 ; *McAllister* v. *Jerman,* 32 Miss. 142 ; *Boyers* v. *Boddie,* 3 Humph. 666 ; *Saunders* v. *Lambert,* 7 Gray, 484 ; *Wright* v. *Laing,* 3 B. & C. 165.

Mr. SIDNEY SMITH, on the same side.

Mr. CHARLES A. GREGORY, with whom was Mr. GEORGE PAYSON, for the appellee, after reviewing the authorities cited on behalf of the appellants, argued that they had no application to the questions involved in this case, but insisted, the real question is, whether the appellants had any such vested interest in the remedy and in the penalties prescribed by the law 'as it existed at the time the contract was made, as to place them beyond legislative control in that regard.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court :

This case was before this court at a former term, and is reported in 44 Ill. 405. Since that time a decree has been rendered in the court below, in conformity with the views there expressed. The record is again brought here, and we are asked by the counsel of appellant to reconsider our former opinion, so far as relates to the rate of interest which

Lawrence is to be allowed. We have re-examined that question, and will state our conclusions.

We agree with the appellant that the case is to be decided, in regard to this point, upon the principles which govern a bill to foreclose, instead of a bill to redeem, a mortgage. Neither do we dissent from the rules laid down in the former decisions of this court concerning our usury laws. But the difference between those cases and the one at bar is, that this case is governed by the law of February 28th, 1867, referred to in our former opinion, which law had not been enacted when the decisions quoted were made.

But it is said this statute is unconstitutional. In this position we can not concur. It takes away no vested right, for the law recognizes no vested right in penalties. This principle is thoroughly well settled, and, as we shall presently show, has been constantly applied by this court to the penalties of usury laws. Neither does the act in question violate the obligation of a contract. It directs that in cases arising upon contracts entered into while the law of 1849 was in force, and before the law of 1857 was passed, the penalty for usury shall be a forfeiture of the excess of interest above what the parties might have lawfully contracted for, and no more. When this contract was made these parties might have lawfully contracted for ten per cent. The borrowers, however, agreed to pay more than that, namely twelve per cent. Can *they* complain of a law as violating a contract, which merely authorizes a judgment or decree against them for less than they had agreed to pay, and which, when they had agreed to pay more than lawful interest, requires them to pay only so much as was lawful?

But it is urged by counsel, citing *Ogden* v. *Saunders*, 12 Wheat. 257, that by the obligation of a contract is meant its legal obligation, and that the laws in force when the contract was made enter into it, and show what was its legal obligation. This, as a general expression of the principle, is undoubtedly true, but it has never been understood to mean that parties

acquire by their contracts a vested right in existing remedies or existing penalties. Take the case before us. This contract was made in 1856. At that time the penalty of the law of 1845, forfeiting for usury three-fold all the interest reserved, was in force, the law of 1849 not having repealed that penalty in regard to money loaned, as was decided by this court in *Kinsey* v. *Nisley*, 23 Ill. 505. Under this law the appellants had the right to pay thirty-six per cent. of this debt by an application of this penalty. Do counsel for appellant contend that this was a right which the legislature could not take away? On the contrary, they only claim in their argument the right to abate the entire interest. But why ask only that, if the usury laws in force when the contract was made entered into it to the extent for which they contend? If their argument is sound, they are entitled to an abatement of three-fold the interest. The law of 1857 has clearly nothing to do with the case, for it was not in existence when the contract was made, and had been superseded by the law of 1867 when the case was tried. If that act had not been passed, it would have been in accordance with previous decisions of this court to hold that, as the law of 1857 expressly took away the three-fold penalty of 1845, it was the design of the legislature to substitute in its place, even as to past contracts, the milder penalty of the law of 1857, namely, the loss of the entire interest. But if the remedy upon an usurious contract given by the act of 1845 could be, and was modified by the act of 1857, so it was again modified by the law of 1867.

But we suppose the counsel for appellants do not base their claim to an abatement of the entire interest on the act of 1857, but rather upon the ground that the contract for interest was illegal, and that the legislature, though the then existing penalty had been taken away, can not authorize the recovery of any portion of the interest, because the contract as made was an unlawful contract. We may agree with counsel to this extent—that the legislature can not make valid a contract

which was unlawful at the time it was made, and hence if this act of 1867 had authorized the recovery of twelve per cent. instead of ten, we might have said that a contract for twelve per cent. interest was then forbidden by law, and the legislature could not authorize it to be enforced. But this they have not attempted. They have simply authorized the enforcement of the contract to the extent to which it was lawful. Ten per cent. was permitted by the law, and they have said ten per cent. may be recovered where parties have contracted to pay so much, even though they have contracted to pay more. It is said this is not enforcing the contract as made, but is making a new contract for the parties. We answer, it is enforcing all of the contract that was legal, and this is a power which the legislature can certainly authorize courts to exercise, where the illegal portion is not of a character to vitiate or affect the residue of the contract. Suppose we were to abate all the interest, as counsel claim we should do. Would not this equally be the enforcing of a contract which the parties never made? The contract for the payment of the money, principal and interest, was all one contract, and if we may render a decree for the principal on the ground that that part of the contract was lawful, without rendering ourselves liable to the charge of making a new contract for the parties, why may we not render a decree for the principal and ten per cent. of the interest, on the same ground? The appellants agreed to pay the appellee a certain sum of money at a certain time. A part of this money was not a lawful debt, and the law, as it then stood, allowed a penalty to be exacted from the appellee for making such a contract. Subsequently, the law-making power interferes and says, this penalty shall not be exacted in cases of this character, and the creditor shall be permitted to recover so much of his debt as was not incurred in violation of the then existing law. As already remarked, unless we are prepared to hold that parties by their contracts acquire a vested right in the existing law, both as to penalties and

342　　　　PARMELEE *et al. v.* LAWRENCE.　　　　[Sept. T.,

Opinion of the Court.

remedies, we can see no ground upon which to say this is beyond the power of the legislature.

The parties then, when they made this contract, although they made it with full knowledge of what the statute was, also made it with full knowledge that the statute might be repealed or modified. The existing statute entered into the contract, not as an absolute and invariable quantity, but *sub modo,* and subject to qualification. It was as if they had stipulated in the written contract, that the appellants would have the legal right, if they chose to do so, to insist on an abatement of thirty-six per cent. of the sum borrowed, if the law then in force should remain unrepealed or unmodified, but that it was subject to repeal or modification, and in that event the appellants would pay whatever interest, not exceeding the lawful ten per cent., the new act of the legislature might authorize to be recovered.

We have remarked, the principle upon which we now insist has already been decided by this court. Thus, in *Stockham* v. *Munson,* 28 Ill. 51, it applied the law of 1857 and declared a forfeiture of the entire interest expressly by virtue of that act, although the contract was made before the law was passed. So in *Dooley* v. *Stipp,* 26 Ill. 86, and *Safford* v. *Vail,* 22 ib. 327, which were all cases arising on contracts made while the penalties of the act of 1845 were in force, but not tried until that of 1857 was passed, although there was no express decision upon the point, it seems to have been taken for granted both by counsel and court, that the penalty to be applied was that of 1857 and not that of 1845. In *Nichols* v. *Stewart,* 21 Ill. 106, and *Matthias* v. *Cook,* 31 ib. 87, which were also suits upon contracts of a like character, the court said, in the first case that there was no penalty and the plaintiff could recover legal interest, and in the other that the circuit court erred in giving an instruction to the effect that the jury could not deduct the interest over ten per cent.

Although the court has several times said that the contract was to be judged by reference to the laws in force when it was made, yet it has not in a single case, so far as we can discover, applied the penalties of the act of 1845 in suits that came to trial after those penalties were repealed by the act of 1857. On the contrary, it seems to have been taken for granted, in those cases where a penalty was imposed, that the amount of the penalty was to be regulated by the existing act of 1857.

In regard to another class of cases cited by counsel for appellants, like *Sutphen* v. *Cushman*, 35 Ill. 186, and *Farwell* v. *Meyer*, ib. 40, we need only say, that while we fully concur in them, we do not perceive their applicability to the case at bar. They were tried before the act of 1867 was passed, and were cases in which the borrower was seeking relief. The court, applying the principle that he who seeks equity must do equity, held that the complainant must pay interest, notwithstanding the transaction was usurious, and as the court was not proceeding on the ground of enforcing a contract, it adopted six per cent. as the legal rate. It might have adopted either a greater or less rate according to its sense of the equity of the case.

The position taken by counsel for appellants, that, in the absence of all statutory law in regard to interest, a contract for the payment of interest for money borrowed would not be enforced by the courts, is one in which we do not concur. Whatever might have been thought in regard to the morality of exacting interest for the use of money before the rise of modern commerce, we imagine no court in this country, in the absence of all statutory regulations, would have any more hesitation in enforcing a special contract for the payment of interest on borrowed money, than it would have in enforcing a contract for the payment of rent for a house or farm. The contract in the present case was wrong only because the statute prohibited more than ten per cent., but it was wrong only to the extent of the additional two per cent. For that wrong

the statute then imposed, as a penalty, the forfeiture of three-fold the interest. Since then the legislature has taken away this penalty, and has said the lender may recover to the extent to which it was lawful for the parties to contract for interest. That the legislature had the power to do this admits of no serious question.

But it is said the act in question was an assumption by the legislature of judicial power. We do not perceive in what mode. It merely lays down a general rule to govern all contracts made during a certain period, taking away an existing penalty, and directing that interest shall be allowed to the extent to which it might have been lawfully reserved.

Since the foregoing opinion was written we have received from counsel for appellant a manuscript copy of an act passed at the recent session of the legislature, and approved March 27, 1869, by which it is provided that the act of 1867, upon which we have been commenting, shall not be construed to apply to any suit pending at the time of its passage. It is not necessary for us to construe this new act. It was not in existence when the decree in this case was rendered. We are examining this record as an appellate court, to determine whether the court below committed an error in rendering its decree. That is to be determined with reference to the law as it then stood, and, tried by that standard, we find no error. What effect this law would have had if it had been passed before the cause was heard and the final decree rendered, it is not necessary to determine.

*Decree affirmed.*