Matter of Clarabel Ruth OAKES and Kenneth Paul Oakes, Bankrupts,

Petition of ROCKFORD SWIFT HOMES, INC., Appellant.

No. 12545.

United States Court of Appeals Seventh Circuit.

June 4, 1959.

Albert Langeluttig, Chicago, Ill., for appellant.

Phillip B. Johnson, Rockford, Ill., for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

HASTINGS, Circuit Judge.

This is a proceeding in bankruptcy. The bankrupts, Kenneth Paul Oakes and Clarabel Ruth Oakes, husband and wife, were the owners of certain residence real estate occupied by them as their home, as joint tenants and not as tenants in common. Appellant, Rockford Swift Homes, Inc. (Rockford), was the owner and holder of a first mortgage lien on this real estate, the validity of which as such is undisputed. Appellee, Stuart H. Sundberg, Trustee in Bankruptcy (Trustee), filed his petition to marshal liens and sell the real estate free and clear therefrom. The Referee in Bankruptcy (Referee) subsequently entered an order approving a report of sale and confirming the sale, and conducted a hearing to determine the validity, amount and priority of the marshaled liens. Later the Referee entered findings that the interest was usurious, and he allowed the principal balance of the debt with interest at the legal rate, together with advancement for insurance and attorney's fees.

Rockford petitioned the district court for review, and the court affirmed the Referee's order except as to the allowance of interest at the legal rate, holding the transaction to be usurious and all interest forfeited thereby. This appeal followed. The total amount involved in this appeal is $906.50.

The facts, as hereinafter set out, are generally undisputed, and we are concerned with a question of law. The bankrupts were the owners of an unimproved lot in Stillman Valley, Illinois. On July 28, 1956, Kenneth Oakes, one of the bankrupts, signed a purchase order agreeing to purchase from Rockford a precut house to be erected on this lot for a price of $4,558.67, paying $50.-67 down and leaving a balance of $4,508 "to be financed." Kenneth Oakes, in effect, elected not to pay the cash price for the materials, and at that time signed a "contract", attached to the purchase order, agreeing that: "The aforesaid balance to be financed shall be payable as follows: 59 monthly installments of $71.-06 each, and one 60 (*sic*) final installment of $2254, which sums shall include principal, interest and service charge." These payments add up to a total of $6,-446.54, or an added increment of $1,938.-54 over and above the cash balance of $4,508 to be financed. In determining the added increment the testimony established that there was added to the cash balance of $4,508 the sum of $450.-90 advanced for insurance, making a total of $4,958.90, on which balance the added charge was figured at the rate of 6% per annum for 60 months for a total of $1,487.64, which amount with the insurance item of $450.90 totals the above figure of $1,938.54. Rockford calls this added charge a "finance charge" and the Trustee labels it "interest."

On September 17, 1958, about six weeks after the contract for payment of $6,446.54 was signed, both bankrupts signed a judgment note payable to the order of Rockford in the sum of $6,446.-54, payable in 59 monthly installments

of $71.06 each and a final installment of $2,254, being the same terms set out in the contract. On the next day, September 18, 1958, both bankrupts signed a trust deed conveying the lot to the City National Bank of Rockford, as trustee, securing the payment of this note. The trust deed was duly recorded and, with the note, was subsequently assigned to third parties who now look to Rockford for payment. The note and trust deed are the basis of Rockford's claim for lien on bankrupts' real estate.

The ultimate issue for our determination is whether the transaction under scrutiny is a "sale" or a "loan." If it is a sale, we are not concerned with the question of interest, and if it is a loan then we are required to determine whether the interest charged is usurious.

■ Both parties agree that the law of Illinois regarding interest and usury applies in this case. See United States Mortgage Co. v. Sperry, 1890, 138 U.S. 313, 335, 11 S.Ct. 321, 34 L.Ed. 969. The applicable Illinois interest statute, Ill. Rev.Stat.1957, Ch. 74, § 4, provides:

"In all written contracts it shall be lawful for the parties to stipulate or agree that seven (7) per cent. per annum, or any less sum of interest, shall be taken and paid upon every one hundred (100) dollars of money loaned or in any manner due and owing from any person to any other person or corporation in this state, * * *."

Section 6 of this Act provides that the penalty for usury shall be for the forfeiture of the whole of the interest contracted to be received and limiting recovery to the principal sum due.

■ On the basic facts in this case set out above this transaction clearly has all of the characteristics of a sale. The Referee's finding, as affirmed by the district court, that the transaction was a loan and usurious, was based on the theory that when the bankrupts subsequently executed their note and deed of trust to Rockford and under these instruments elected to claim a lien on the real

estate, they thereby in effect converted the sale into a loan. We do not agree. The obvious purpose of the note and trust deed was to furnish security to the seller in a form it might discount by assignment, and this is exactly what was done. We cannot read into this an election on the part of Rockford to treat the transaction as a loan rather than a sale. There is no claim or finding of any shift, trick or subterfuge and cases cited turning upon that point are not applicable.

Appellant finds strong support in Manufacturers Finance Trust v. Stone, 1929, 251 Ill.App. 414, where the court had before it a replevin action in which a defense of usury had been asserted against the assignee of the seller of an automobile. The court said, 251 Ill.App. at pages 420–421:

"The proof shows that the actual transaction between the parties was in no sense a loaning of money, which is a necessary ingredient to constitute usury. The contract between appellee and the auto company was a sale on the part of the auto company to appellee as purchaser, in which appellee, being unwilling to pay all cash for his purchase, chose to pay a higher price by way of deferred monthly payments extending over a period of 12 months. These deferred payments were evidenced in the form of a note, secured by chattel mortgage on the car so purchased, and which, as a matter of fact, represented the balance of the purchase price, fixed by the auto company on a basis which would enable it, as payee of the note, to discount it with appellant and realize for the auto company its fixed cash selling price of the car in question.

"Appellee was a voluntary purchaser of property which was offered to him under two conditions, one, a cash price and the second, a higher price, if he elected to pay under a deferred monthly payment plan. He elected to take the latter

plan, and knew, before he signed the note and mortgage, that the auto company, as seller, would add an additional sum to the note, which would enable it to discount the paper with a third person, and thereby realize the established price of the car. Thus, appellee was a bona fide purchaser of property, not a borrower of money, and, hence, not within the purview and protection of the usury laws."

The opinion then quotes with approval the following language from Primley v. Shirk, 1895, 60 Ill.App. 312, 314, affirmed in 1896, 163 Ill. 389, 45 N.E. 247:

"On a sale of property the parties may make such a bargain as they can agree upon, and there can be no usury charged simply because the price fixed at one sum if paid at one time, and at another sum if paid at another.

"Discounts, at a rate greater than legal interest, for payment before the credit expires, are constantly allowed in commercial transactions with no thought of usury."

Finance charges, which are those costs added by a seller to cover the burden of extending credit on a time or deferred payment plan as against a cash sale, contrasted to a lender's interest charge on a loan of money, have been the subject of widespread state and federal regulation. Indeed, effective January 1, 1958, the Illinois legislature provided for laws governing retail installment sales and affording regulation of this type of commercial credit. See Ill.Rev.Stat.1957, ch. 121½, § 223 et seq. While it is not controlling in the case at bar it is interesting to note that in that statute the term "finance charge" is defined as "that part of the time sales price by which it exceeds the aggregate of the cash sales price and the amount, if any, included in a retail installment sale for insurance

and other benefits and official fees." In a broader sense, if the established commercial practice of adding finance charges to deferred payment purchase agreements or contracts for payment is to be regulated or brought within the purview of usury statutes, we believe it should be done by the legislative process rather than by judicial decree.[1]

■ Although not necessary to our holding, we may also point out that, assuming, arguendo, that the instant transaction were a loan, this case would still call for reversal. We have earlier in this opinion demonstrated how the so-called finance or interest charge was calculated, viz: unpaid cash balance, plus advancement for insurance, multiplied by six per cent for five years equals the contract time balance. Thus, the percentage figure used is less than the statutory maximum in Illinois of seven per cent. The net finance or interest charge (excluding the insurance advancement) is $1,487.64. The Referee found that the total maximum amount of interest allowable at seven per cent to be $1,577.80 (seven per cent on the unpaid cash balance for five years). In finding the interest here to be usurious the Referee erred in including the insurance advancement of $450.90 as "interest."

We hold that the district court erred in affirming the Referee's order of July 17, 1958 in so far as it held appellee's note and trust deed to be usurious, and, further, in ordering all interest thereon to be forfeited. This case is ordered remanded for redetermination of the amount of appellee's lien consistent with this opinion and that part of the order of the district court appealed from is

Reversed.

DUFFY, Chief Judge (concurring).

As an original proposition, I would say the transaction in question was a loan. When a seller receives considera-

1. For interesting discussions with reference to proposals that courts judicially declare that finance charges come under the prohibitions of usury statutes, we have been referred to the note "Judicial and Legislative Treatment of 'Usurious' Credit Sales", 71 Harv.L.Rev. 1143 (1958), and a case note on the application of usury statutes to credit sales in 57 Mich.L.Rev. 298 (1958).

**520**

tion from a buyer solely because of delayed payment, this consideration is, in fact, interest whether it is called "service charges," "finance charges," "risk fees," or some other name. Nevertheless, in this case we must follow Illinois law and decisions by Illinois Courts. Decisions such as Manufacturers Finance Trust v. Stone, 251 Ill.App. 414 compel a holding by us that the transaction in question is a sale and not a loan.

I challenge the correctness of the statement in the Court's opinion that the percentage figure used in the transaction under consideration was less than the statutory Illinois maximum of 7%. This would be true only if the total principal amount were to remain outstanding over the entire five-year period. Overlooked is the fact that the monthly payments also reduce the principal. The charges made are known in finance circles as a "6% add-on" and which would exceed in straight interest the statutory maximum of 7%.