MICHAEL B. SWEENEY, Plaintiff-Appellee, v. CITICORP PERSON-TO-PERSON FINANCIAL CENTER, INC., *et al.*, Defendants-Appellants.

First District (1st Division)   No. 86—1972

Opinion filed June 15, 1987.

Sidley & Austin, of Chicago (John C. Woulfe, Michael J. Sweeney, and Bruce W. Melton, of counsel), for appellants.

Hartunian, Futterman & Howard, Chartered, of Chicago (Aram A. Hartunian, Robert M. Weissbourd, and James G. Bradtke, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Michael B. Sweeney, filed the present action in the circuit court of Cook County on October 30, 1985, individually, and on behalf of a class of all those similarly situated, against Citicorp Person-to-Person Financial Center, Inc. (Citicorp Financial), and Citicorp Person-to-Person Financial Center of Illinois, Inc. (Citicorp Illinois). The plaintiff alleged that the defendants had violated the Illinois usury statute by contracting for interest payments in excess of the statutory limit through a scheme of loan splitting. This is a refiled action which had been previously dismissed pending proceedings in the United States Bankruptcy Court involving the plaintiff's Chapter 13 petition (11 U.S.C. sec. 1301 *et seq.* (1982)). *Sweeney v. Citicorp Person-to-Person Financial Center, Inc.* (1985), 137 Ill. App. 3d 1023, 485 N.E.2d 423.

In the plaintiff's complaint, he asserted that in November 1978 he sought to borrow $15,000 from one of the defendants. Subsequently, the plaintiff received two loans: one loan from Citicorp Financial in

the amount of $9,980 at an interest rate of 17.99% a year;[1] and the other loan from Citicorp Illinois in the amount of $5,254.06 at an interest rate of 12.49% a year.[2] Both loans were secured by a second mortgage on plaintiff's residence. In his complaint, the plaintiff alleged in count I that the defendants had split the $15,000 he had requested into two loans to evade the interest rate limitations of the Interest Act (now recodified as Ill. Rev. Stat. 1985, ch. 17, par. 6404 *et seq.*); thus, the loans should be treated as a single loan, and, as such, the resulting loan exceeded the usury ceiling allowed by law at that time. In count II plaintiff claims that, even if the amount borrowed was not to be treated as a single loan, the amount of the interest on the loan from Citicorp Illinois still exceeded the amount allowed by the Interest Act.

The plaintiff's complaint sought to recover statutory penalties in both counts on behalf of himself and the plaintiff class, provided under section 6 of the Interest Act (Ill. Rev. Stat. 1985, ch. 17, par. 6413), which allows a borrower under a contract charging unlawful interest rates to recover a penalty of twice the total interest contracted for or paid, plus costs and attorney fees. Shortly after the loans herein had been made to the plaintiff, the Illinois General Assembly amended the Interest Act to exclude from the usury statute all loans secured by a mortgage on residential real estate (Pub. Act 81—1097, 1979 Ill. Laws 4207—11; Pub. Act 82—660, 1981 Ill. Laws 3436—57) and, ultimately, the exemption was extended to all loans secured by any kind of real estate (Pub. Act 82—951, 1982 Ill. Laws 2290—93) in August 1982 (codified as Ill. Rev. Stat. 1983, ch. 17, par. 6404).

On May 26, 1986, the defendants moved to dismiss plaintiff's complaint. The defendants' motion contended that the above amendment to the Interest Act removed any basis for the plaintiff's asserted cause of action, and, also, that the plaintiff's claims here were barred by *res judicata* because they had, at least indirectly, been previously ruled upon in plaintiff's bankruptcy action presently pending in the United States Bankruptcy Court.

The trial court denied the motion to dismiss but granted the defendants' motion to certify the court's order for immediate interlocutory appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). The trial court certified two questions for appeal:

---

[1]The plaintiff contends that this loan was made under the Consumer Installment Loan Act, now recodified as Ill. Rev. Stat. 1985, ch. 17, par. 5401 *et seq.*

[2]The plaintiff alleges that this loan was made under the Interest Act, now recodified as Ill. Rev. Stat. 1985, ch. 17, par. 6404.

"1. Whether plaintiff is barred from maintaining this usury action by reason of amendments to the Illinois usury laws modifying or eliminating the usury ceiling on various classes of loans, which amendments occurred subsequent to the time plaintiff borrowed money from defendants and prior to the institution of this action.

2. Whether plaintiff is barred by res judicata from maintaining this action as a result of prior events in his two Chapter 13 bankruptcy proceedings, the second of which is currently pending."

On September 11, 1986, we granted the defendants' petition for leave to appeal. Before addressing the defendants' issues on appeal, we believe a presentation of a short background of this litigation is necessary to an understanding of these proceedings. Plaintiff made payments on the loans involved herein until May 12, 1980, when he filed a voluntary petition for a wage-earner reorganization under chapter 13 of the Bankruptcy Code (11 U.S.C. sec. 1301 *et seq.* (1982)). While plaintiff initially disputed the validity of the debts owed to the defendants in that proceeding, that dispute was settled, and the parties stipulated and the court ordered that the plaintiff, Mr. Sweeney, owed defendants $13,832.57, which was substantially the full amount of the loans that were outstanding at that time plus interest. On July 1, 1980, plaintiff's chapter 13 plan of reorganization, providing for payment of defendants' claims, was confirmed by the bankruptcy court.

Thereafter, on December 21, 1982, the plaintiff moved to dismiss the chapter 13 proceeding without prejudice pursuant to the conversion or dismissal provision of the Federal Bankruptcy Code (11 U.S.C. sec. 1307(b) (1982)). Shortly after the bankruptcy court granted plaintiff's motion, plaintiff filed a second voluntary petition in bankruptcy. In this second petition the defendants' debts were not disputed, and an order confirming this second chapter 13 plan was entered on June 15, 1983. This petition is still pending in the bankruptcy court.

On December 23, 1983, plaintiff filed his first suit in the circuit court of Cook County against the defendants, alleging substantially identical usury claims as asserted in the action now before this court. (*Sweeney v. Citicorp Person-to-Person Financial Center, Inc.*, No. 83 L 53291.) The defendants moved to dismiss plaintiff's claims in that case on the same grounds presented to the trial court here. However, the trial court did not rely on the grounds presented by defendants, but dismissed the plaintiff's case on the basis of the prior pending action in the United States Bankruptcy Court. On appeal this court

affirmed the dismissal by the trial court and noted that "if the bankruptcy court ultimately dismisses the State claims, plaintiff can reinstitute this complaint." *Sweeney v. Citicorp Person-to-Person Financial Center, Inc.* (1985), 137 Ill. App. 3d 1023, 1026, 485 N.E.2d 423, 425.

After plaintiff's action had been dismissed in the trial court, plaintiff then filed his usury claims as an adversary proceeding in bankruptcy court. However, the plaintiff thereafter moved in the district court for abstention regarding the adversary proceeding pursuant to jurisdictional rule (28 U.S.C. sec. 1334(c)(2) (1982)). On June 5, 1985, the United States District Court granted plaintiff's motion and ruled that the bankruptcy court should abstain from exercising jurisdiction over plaintiff's claims. (*Sweeney v. Citicorp Person-to-Person Financial Center, Inc.* (N.D. Ill. 1985), 49 Bankr. 1008.) As stated above, plaintiff then again filed this State court action in the circuit court of Cook County realleging his usury claims.

In this appeal the defendants contend, as they did in the trial court, that the plaintiff's cause of action must be dismissed because the basis upon which the plaintiff's complaint is grounded, *viz.*, the purported violation of the usury law, has been amended and now specifically exempts loans such as plaintiff's from its application. Accordingly, the defendants argue that the plaintiff no longer has a cause of action against them for violation of the usury statute. Additionally, the defendants again assert that plaintiff's cause of action is also barred because the indebtedness to the defendants has already been determined by the proceedings in the United States Bankruptcy Court. Because of our resolution of the defendants' first contention, we find it unnecessary to consider their second contention.

Insofar as their first contention is concerned, the defendants more particularly argue that the 1980 amendment to section 4 of the Interest Act which exempted loans secured by real estate, such as those to the plaintiff, from the usury limitations, establishes that the plaintiff has no cause of action based on the 1978 loans. The plaintiff, Michael Sweeney, argues, however, that under section 4 the unlawfulness of a loan must actually be determined as of the time the loan is made, since section 4 expressly provides:

> "The maximum rate of interest that may lawfully be contracted for is determined by the law applicable thereto at the time the contract is made." Ill. Rev. Stat. 1985, ch. 17, par. 6404(1).

Consequently, the plaintiff contends that since the loans here were usurious under the statute at the time they were made, they were,

and still are, therefore, unlawful. While the defendants continue to maintain that the loans were not in fact usurious at any time, for purposes of the motion to dismiss the defendants do admit that the loans were usurious. The defendants submit, however, that even if the loans were usurious when they were made, they are not so now, and it is the present law which controls. Furthermore, the defendants note that the question whether the loans were usurious is not before this court on appeal.

The plaintiff in his appeal concludes from his construction of section 4 that if the defendants' rates were unlawful in November 1978 and, thus, illegal when the loans were made to the plaintiff, they cannot become lawful by a subsequent lifting of the loan rate ceilings in the Interest Act. The plaintiff submits this is consistent with the legislative intent of the amendments to the Interest Act and with the Illinois cases that have considered the issue. That is, the plaintiff asserts that if a contract is illegal when made it cannot later be made legal. In any event, the plaintiff contends, even if an amendment to a usury statute is retroactive as to any remedy provisions, the remedy provisions of section 6 of the Illinois statute have not been changed, only the substantive provisions in section 4 were changed and hence, the plaintiff can still maintain this action. The defendants respond that section 4 must be read in its entirety, and, as such, it is clear that the exemption of loans secured by real estate was intended to be retroactive. Contrary to plaintiff's contention, the defendants rejoin, this view is the one consistent with the modern view of the courts in considering amendments to usury statutes. Additionally, the defendants submit that it is the entire usury statute that is considered remedial and not just a portion of it.

The seminal Illinois case is *Parmelee v. Lawrence* (1868), 48 Ill. 331. In that case, the Illinois Supreme Court applied an amendment to the Illinois usury statute retroactively to authorize the recovery of interest that was prohibited under the usury statute which existed at the time the contract was entered. In commenting on the retroactive effect of the amendment, the court stated:

"[I]t is said this statute is unconstitutional. In this position we can not [*sic*] concur. It takes away no vested right, for the law recognizes no vested right in penalties. This principle is thoroughly well settled, and, *** has been constantly applied by this court to the penalties of usury laws. Neither does the act in question violate the obligation of a contract." 48 Ill. 331, 339.

However, the court in *Parmelee* also suggested in its opinion that a

contract, illegal at its inception, might well remain illegal, stating:

"We may agree with counsel to this extent — that the legislature can not [sic] make valid a contract which was unlawful at the time it was made, and hence if this act of 1867 had authorized the recovery of twelve per cent. [sic] instead of ten [which was the legal rate at the time of the contract], we might have said that a contract for twelve per cent. [sic] interest was then forbidden by law, and the legislature could not authorize it to be enforced. But this they have not attempted." 48 Ill. 331, 340-41.

It is this language which raises the uncertainty of the case's application here. However, we agree with the defendants that this statement was merely *dictum* and also note that in *Parmelee* the court did enforce the contract there which was usurious when made. Hence, we find this collateral observation by the court actually inconsistent with the court's holding, since it was also the appellant's argument there that, inasmuch as the original contract for the interest was illegal when made, *i.e.*, by exceeding the statutory limit, the legislature could not authorize the recovery of any portion of the interest. The holding of *Parmelee* implicitly rejected this contention. Furthermore, as the defendants have noted, the latter Illinois cases do not seem to have considered this statement of the court, or to have followed it.

Furthermore, contrary to the plaintiff's argument, that an amendment to a usury statute removing certain types of loans from the statutory limitations is not retroactive, those cases which have considered similar issues have held that they do have retroactive effect. In *Farmland Enterprises, Inc. v. Schueman* (1982), 212 Neb. 342, 322 N.W.2d 665, the plaintiff there contracted for a half-million dollar loan at an alleged usurious interest rate. Subsequent to the contract, the Nebraska legislature exempted loans from the usury statute in which the principal amount exceeded $100,000. The penalty provisions of the statute there, as here, remained unchanged. The Nebraska Supreme Court held the usury defense was abrogated by the amendment and that the transaction at issue in that case was, thus, exempt. Also, in *United Realty Trust v. Property Development & Research Co.* (Minn. 1978), 269 N.W.2d 737, the Minnesota Supreme Court reached a similar result. There, the borrower had defaulted on a $2,310,000 loan and had attempted to assert a usury defense. The court upheld the trial court's determination that the loan was exempt from the usury law by reason of a subsequent amendment to the usury law exempting all loans over $100,000, even though the statute there had provided that loans which had been made in violation of the statute were void.

The United States Supreme Court reached a similar result in the only case on this subject that it has considered. In *Ewell v. Daggs* (1883), 108 U.S. 143, 27 L. Ed. 682, 2 S. Ct. 408, a lender brought suit to foreclose on a mortgage securing a note which was usurious when made under the Texas usury statute. After the loan was made, but before the suit to foreclose, Texas passed a constitutional amendment repealing all of its usury laws. The borrower raised the defense of usury contending there, as does the plaintiff here, that the loan was usurious and illegal when made, that the law at the time of making the loan should govern, and that the repeal of the usury laws should not be given retroactive effect. The Supreme Court held that usury laws are penal in nature and that the repeal of such laws without a savings clause operates retrospectively, cutting off the defense of usury in all future actions, even upon contracts previously entered.

In rejecting the borrower's contention there, the court found that giving effect to such an amendment denied no one any vested rights, stating:

> "[T]he right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, *** may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur." *Ewell v. Daggs* (1883), 108 U.S. 143, 151, 27 L. Ed. 682, 685, 2 S. Ct. 408, 413-14.

■ We believe that this is the proper view. All usury statutes are in derogation of the common law and are a restriction upon the freedom of contract. Thus, there is no usury in the absence of a law limiting the rate of interest, and a particular rate of interest is illegal only if it exceeds the statutory limit applicable in the particular case (see *Whitworth v. Davey* (1919), 279 Mo. 672, 216 S.W. 736). There is also no constitutionally vested right to the defense of usury, and its repeal merely allows what was the original obligation of the parties to be enforced. See generally 14 S. Williston, Contracts sec. 1683 (3d ed. 1972); 47 C.J.S. *Interest and Usury* sec. 334 (1955); 91 C.J.S. *Usury* sec. 10 (1955).

■ Furthermore, we find the plaintiff's contention here, that the 1969 amendment to section 4 (Ill. Rev. Stat. 1985, ch. 17, par. 6404) requires the application of the rate of interest at the time of entering

into the contract as the maximum, lawful, nonusurious rate of interest, is without any foundation. We believe, as the defendants contend, that a reading of the entire section of the statute leads to the conclusion that this particular provision has nothing to do with the provision of section 4 exempting certain classes of loan, but is rather directed merely to determining what are the maximum allowable rates of interest. It was primarily intended to protect borrowers from undisclosed interest rates in loan contracts, *i.e.*, rates such as those involved in the "highest rate of interest" clauses.

▮▮ Finally, we note that the plaintiff has, as a representative of a class of plaintiffs, brought this belated action to actually affirmatively recover the statutory penalties provided in the statute for usurious loans, *viz.*, two times the interest rate plus attorney fees, and not as a defense to a suit by the lender. The usury laws were intended to protect the unwary and needy debtor against the unconscionable money lender. The plaintiff here does not seek protection from a usurious loan, but rather seeks only a windfall, authorized by the penalty section of the statute. This hardly seems to be the type of situation intended to be covered by the usury law. Accordingly, we believe this case most properly justifies the application of the general rule that the right to a remedy should be determined on the basis of the law and the circumstances at the time the suit is brought and when judgment is to be rendered. (See *Ewell v. Daggs* (1883), 108 U.S. 143, 27 L. Ed. 682, 2 S. Ct. 408; *Farmland Enterprises, Inc. v. Schueman* (1982), 212 Neb. 342, 322 N.W.2d 665; *Orden v. Crawshaw Mortgage & Investment Co.* (1980), 109 Cal. App. 3d 141, 167 Cal. Rptr. 62; *United Realty Trust v. Property Development & Research Co.* (Minn. 1978), 269 N.W.2d 737.) As decided above, under the present law the prior transaction is not usurious; thus, there is no penalty to recover and no remedy available for the plaintiff and the plaintiff class. Hence, the plaintiff's suit should properly have been dismissed by the trial court.

For all of the above reasons, we find that the order of the circuit court of Cook County denying the defendants' motion to dismiss is erroneous. Therefore, the order is hereby reversed and the cause is remanded to the circuit court of Cook County for the entry of an order granting the defendants' motion to dismiss, for the entry of a judgment dismissing the plaintiff's cause of action, and any other necessary proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL and BUCKLEY, JJ., concur.