In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3310

BABA-DAINJA EL,

*Plaintiff-Appellant*,

*v.*

AMERICREDIT FINANCIAL SERVICES, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 12 C 153—**Harry D. Leinenweber**, *Judge*.

SUBMITTED FEBRUARY 14, 2013—DECIDED MARCH 20, 2013

Before POSNER, WOOD, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff bought a used pickup truck in 2011 for $28,000 and financed the purchase by means of a six-year installment contract that specified an interest rate of 23.9 percent. The dealer who sold him the truck assigned the contract to AmeriCredit. But after making the first installment the plaintiff sent his new creditor a copy of the installment contract that he had stamped "accepted for value and

returned for value for settlement and closure," and told AmeriCredit to collect the balance of the money due it under the contract from the U.S. Treasury. AmeriCredit repossessed the truck, sold it, and billed the plaintiff $11,322.28 to cover the difference between the price at which the truck had been resold and the unpaid balance on the installment contract.

The plaintiff responded by suing AmeriCredit and two of its officers in a federal district court in Illinois for $34 million in compensatory damages and $2.2 billion in punitive damages. Needless to say, he was proceeding pro se. The district judge couldn't make sense of the complaint and dismissed it as being frivolous. Frivolous it is, though not completely unintelligible. It has the earmarks of the "Sovereign Citizens" movement. As explained by the FBI, "Sovereign citizens view the USG [U.S. government] as bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back US currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral. Sovereign citizens exploit this belief by filing fraudulent financial documents charging their debt to the Treasury Department." Federal Bureau of Investigation, "Sovereign Citizens: An Introduction for Law Enforcement" 3 (Nov. 2010), http://info.publicintelligence.net/FBI-SovereignCitizens.pdf (visited March 6, 2013).

The plaintiff based federal jurisdiction on the admiralty and diversity jurisdictions of the federal courts. Admiralty jurisdiction over his case may seem

unavailable to him on two grounds: the case has nothing to do with maritime activities; and, "in the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented." *Hagans v. Lavine*, 415 U.S. 528, 537 (1974); see also *Frederick v. Marquette National Bank*, 911 F.2d 1, 2 (7th Cir. 1990); *Beauchamp v. Sullivan*, 21 F.3d 789, 790 (7th Cir. 1994); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 817 n. 5 (4th Cir. 2004). The first ground is solid, but not the second. Article III, section 2 of the Constitution confers federal jurisdiction over admiralty cases. But cases don't have to arise under federal law in order to be within the admiralty jurisdiction, *Romero v. International Terminal Operating Co.*, 358 U.S. 354 (1959)—they just have to involve maritime activities. Often, however, they do arise from federal law, either statutory or judge-made. It is unclear what the plaintiff's admiralty claim arises from, but clear that the claim is not within the admiralty jurisdiction because it has no relation to maritime activities. (The Sovereign Citizens movement does not recognize the limitation of the admiralty jurisdiction to maritime activities. See "Why We Are in the Admiralty Jurisdiction," Apr. 18, 2004, http://freedom-school.com/law/Admiralty.htm (visited March 7, 2013), where we read, for example, that "any of the actors working for the United States are vessels . . . . We are all vessels; human bags carrying 'sea water.'")

Dismissals because of absence of federal jurisdiction ordinarily are without prejudice—"dismissal [for want of federal jurisdiction] with prejudice is inappropriate because such a dismissal may improperly prevent a litigant from refiling his complaint in another court that

does have jurisdiction…, and perhaps more essentially, once a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th Cir. 2006). We added the qualifier "ordinarily" for two reasons. The first is the sensible remark in *Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998), that "in rare circumstances, a district court may use its inherent power to dismiss with prejudice (as a sanction for misconduct) even a case over which it lacks jurisdiction, and its decision to do so is reviewed for abuse of discretion." We return to this qualification at the end of the opinion.

Second, if the reason there's no federal jurisdiction is the plaintiff's having predicated jurisdiction on a frivolous federal claim, dismissal with prejudice is appropriate, *Beauchamp v. Sullivan, supra*, 21 F.3d at 790-91, for such a suit will go nowhere in any court. This almost certainly is the case insofar as the plaintiff's admiralty claim is concerned, if that claim is founded on federal law (though if not it's still outside admiralty jurisdiction, as we've pointed out). But he invoked diversity jurisdiction as well, and if there was diversity jurisdiction but the claim asserted was frivolous the case should have been dismissed with prejudice. When a case of which the court has jurisdiction is dismissed because it fails to state a claim (which a frivolous suit obviously fails to do), the dismissal is a merits determination and is therefore with prejudice. The difference between a federal-question case that is frivolous and a diversity case that is frivolous is that the latter case but

not the former is within federal jurisdiction, because a substantial claim is not a condition of diversity jurisdiction.

The district court dismissed the entire complaint without prejudice. Indeed, remarking that the "inordinately high interest rate" in the installment contract (almost 24 percent) might violate Illinois's usury law, he invited the plaintiff to file an amended complaint. The plaintiff did so but did not take the judge's hint about usury. Had he done so, he would soon have hit a dead end. Illinois does not recognize a common law claim for usury, *Tennant v. Joerns*, 160 N.E. 160, 162-63 (Ill. 1928) (per curiam); *Sweeney v. Citicorp Person-to-Person Financial Center, Inc.*, 510 N.E.2d 93, 98 (Ill. App. 1987), and the Illinois Motor Vehicle Retail Installment Sales Act, 815 ILCS 375/21, provides that "notwithstanding the provisions of any other statute, for motor vehicle retail installment contracts executed after September 25, 1981, there shall be no limit on the finance charges which may be charged, collected, and received." See *General Motors Acceptance Corp. v. Kettelson*, 580 N.E.2d 187 (Ill. App. 1991); cf. *In re Oakes*, 267 F.2d 516, 518 (7th Cir. 1959) (Illinois law). Instead the plaintiff refiled his original complaint with immaterial changes. The judge again dismissed the complaint, but this time ruled (incorrectly as we'll see) that it had successfully invoked diversity jurisdiction; and so this time he made the dismissal a dismissal on the merits and therefore with prejudice, as we suggested is the proper procedure when a claim within the diversity jurisdiction is frivolous.

AmeriCredit filed a counterclaim to the amended complaint, seeking the $11,322.28 that it was out plus

prejudgment interest and attorneys' fees. It did not seek, and could not, for a mere breach of contract, have obtained, punitive damages. *Morrow v. L.A. Goldschmidt Associates, Inc.*, 492 N.E.2d 181, 183 (Ill. 1986). (The two officers whom the plaintiff had sued were not counter-claimants; the $11,322.28 was owed to AmeriCredit, not to them.) It might have charged the plaintiff with fraud, in which event it could have sought punitive damages; but it did not. The plaintiff did not answer the counter-claim and eventually the judge entered a default judg-ment for $13,582, plus costs, in favor of AmeriCredit.

The plaintiff has appealed. The appeal tracks his sub-mission in the district court. In their brief in response the defendants argue that the district court never acquired jurisdiction over the plaintiff's suit, because the only possible basis for federal jurisdiction was diversity of citizenship and the complaint didn't state a colorable claim for monetary relief in excess of $75,000, as the diversity statute requires. 28 U.S.C. § 1332(a).

If there is no jurisdiction over the plaintiff's suit, there would be jurisdiction over the counterclaim only if, were it filed as a free-standing suit, it would be within federal jurisdiction. See *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 (3d Cir. 2011); *Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 546 (6th Cir. 1994). The defen-dants' counterclaim is based exclusively on state law, so the only basis of federal jurisdiction is the diversity jurisdiction, which requires that the parties be of diverse citizenship and the amount in controversy exceed $75,000. The defendants' brief asks us to affirm the default judgment but does not contend that the counter-

claim satisfied the amount in controversy require-ment. The plaintiff's opening and reply briefs don't mention the counterclaim.

We ordered the defendants' brief stricken because it lacked an adequate jurisdictional statement. The defen-dants filed an amended brief. The jurisdictional statement in it states that the plaintiff's suit is within diversity jurisdiction because it "alleges that the matter in contro-versy exceeds the sum or value of $75,000.00, exclusive of interest and costs" and that the plaintiff is a citizen of Illinois and the three defendants are citizens of Delaware (AmeriCredit) and Texas (AmeriCredit and the two officers). The brief adds that the district court had sup-plemental jurisdiction over the counterclaim, 28 U.S.C. § 1367, and repeats the request in the stricken brief that we affirm the default judgment.

The revised jurisdictional statement is riddled with errors. The fact that the plaintiff *alleged* an amount in controversy in excess of $75,000—in fact in excess of $2 billion—does not establish that this *is* the amount in controversy. "[I]f from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount [that is, an amount required to main-tain a diversity suit] claimed or if, from the proofs, the court is satisfied to a like certainty that the plain-tiff never was entitled to recover that amount, . . . the suit will be dismissed." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). It is a legal certainty that the plaintiff is entitled to recover nothing. Since his suit is therefore not within federal jurisdiction (for remember that his invocation of admiralty jurisdiction

is also groundless), the counterclaim cannot be within the district court's supplemental jurisdiction. That jurisdiction is limited to claims intimately related to claims that are within federal jurisdiction on some other ground. "[I]n *any civil action of which the district courts have original jurisdiction*, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added); see *Kelly v. Fleetwood Enterprises, Inc.*, 377 F.3d 1034, 1040 (9th Cir. 2004).

Nor has the counterclaim, considered as an independent suit, been shown to be within federal jurisdiction. AmeriCredit has as we said no federal claim; and while there is complete diversity of citizenship, the amount in controversy alleged by AmeriCredit is below the statutory minimum; it is only $11,000 plus prejudgment interest. This is another bobble by AmeriCredit, though one without consequences. The loan contract required the plaintiff to pay "reasonable attorney's fees, costs and expenses incurred [by AmeriCredit] in the collection or enforcement of the debt," and when such expenses are sought as part of an underlying claim, rather than pursuant to a separate post-judgment right to "costs" or "fees" incurred in the litigation, they are considered part of the amount in controversy. *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998); *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723-24 (5th Cir. 2002); *Miera v. Dairyland*

*Ins. Co.* 143 F.3d 1337, 1340 (10th Cir. 1998); compare *Smith v. American General Life & Accident Ins. Co.*, 337 F.3d 888, 896-97 (7th Cir. 2003); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273-74 (7th Cir. 2001); *Gardynski-Leschuck v. Ford Motor Co., supra*, 142 F.3d at 958-59; *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). Nevertheless it's inconceivable that AmeriCredit's claim was worth more than $75,000 exclusive of interest and costs when we consider the default judgment that AmeriCredit does not challenge as inadequate—a measly $13,582.75, plus costs.

So the judge should have dismissed the counterclaim for want of federal jurisdiction, though without prejudice because AmeriCredit should be allowed to refile it as a new suit in an Illinois state court. Not that that would be an ideal solution. The amount AmeriCredit would be suing for might be too small to make a suit worthwhile unless it would have an *in terrorem* effect that would make future debtors less inclined to try to stiff AmeriCredit, which seems unrealistic. Rather than file a counterclaim over which the district court had no jurisdiction, as AmeriCredit's lawyers should have realized from the get-go, or bring suit in state court, AmeriCredit could have asked the judge to impose sanctions on the plaintiff under Fed. R. Civ. P. 11 for filing a frivolous suit; it did not.

It might seem that an appropriate sanction would have been to award AmeriCredit the amount of the default judgment, on the theory that the plaintiff's frivolous suit foisted that cost on AmeriCredit. But that isn't

correct. Had the plaintiff simply failed to pay the $11,322.28 it owed AmeriCredit, AmeriCredit would have had to file a suit in state court if it wanted to collect the money. The harm it incurred by being sued frivolously by the plaintiff was the expense of defending against the plaintiff's suit—that was the expense it could have sought reimbursement of under Rule 11 but didn't.

Another possible sanction, as we suggested earlier, would have been dismissal of the plaintiff's second complaint with prejudice, so that he cannot refile his suit against AmeriCredit in state court; for the only motive of such a refiling could be harassment. The district judge did dismiss the second complaint with prejudice, but not as a sanction—instead on the erroneous ground that there was federal diversity jurisdiction and he was deciding the merits.

The judgment must therefore be vacated and the case remanded with directions that the judge (1) either dismiss the plaintiff's suit without prejudice or dismiss with prejudice, as a sanction (not requested by the defendant, but within the court's inherent authority); (2) vacate the default judgment in favor of AmeriCredit on its counterclaim; and (3) dismiss the counterclaim but without prejudice.

VACATED, AND REMANDED
WITH DIRECTIONS.