## EWELL *v.* DAGGS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

Decided March 26th, 1883.

*Interest—Limitation—Mortgages—Usury.*

1. If an action on the debt secured by a mortgage of real estate in the State of Texas is not barred by the statute of limitations, a suit on the mortgage itself is not barred, and this, whether the owner of the equity or a third person be the mortgage debtor.
2. A contract of a kind which a statute in Texas makes "void" for usury, is voidable only; and a repeal of the statute declaring such contracts void deprives the debtor of the statutory defence.
3. When the amount of the face of a note represents a principal sum and interest thereon at a rate higher than the legal rate, and nothing is said in the note itself about interest, the note after maturity will bear interest at the legal rate.

On May 27th, 1856, James B. Ewell and his wife, having the legal title in fee to the premises, made and delivered to

Daggs a promissory note of that date, payable three years after date to his order, for $3,556, and to secure the same executed and delivered to Daggs a deed of mortgage upon a tract of land in Guadulupe County, Texas, containing 1,653 acres, which mortgage was duly proved and recorded on June 5th, 1856.

James B. Ewell acquired the legal title to this land on April 13th, 1854 ; but, in equity, it belonged to his brother, George W. Ewell, the appellant, for whom and with whose money it had been bought. The legal title was conveyed by James B. Ewell to his brother, George W. Ewell, on September 6th, 1856, the latter having no knowledge of the mortgage to Daggs, and Daggs having no notice, actual or constructive, of the equity of George W. Ewell.

On March 9th, 1872, Daggs, being a citizen of Virginia, brought his action at law against James B. Ewell and wife, on the note, in the Circuit Court of the United States for the Western District of Texas, and recovered judgment against James B. Ewell, July 14th, 1873, for $3,530.93.

The defence set-up by James B. Ewell in that suit was usury, the actual amount of the loan having been $2,000, the residue of the note being interest on that amount until its maturity, at the rate of 20 per cent. per annum, compounded annually.

A statute of Texas in force at that time on the subject of usury was as follows :

" That all contracts or instruments of writing whatsoever, which may in any way, directly or indirectly, violate the foregoing provisions of this act by stipulating for, allowing, or receiving a greater premium or rate of interest than twelve per cent. per annum for the loan, payment, or delivery of any money, goods, wares, or merchandise, bonds, notes of hand, or any commodity, shall be void and of no effect for the whole premium or rate of interest only ; but the principal sum of money or the value of the goods, wares, merchandise, bonds, notes of hand, or commodity, may be received and recovered."

Payments had been made on the note prior to the commence-

ment of the suit to the amount of $1,745, which were allowed; but the usurious interest was not deducted, on the ground that the Constitution of Texas, which went into effect in 1870, and continued in force till after the recovery of the judgment, repealed all usury laws and prevented any defence on that account.

. The judgment not being paid, Daggs filed the present bill in equity January 14th, 1875, to foreclose the mortgage and sell the mortgaged premises, to which James B. Ewell and his wife, George W. Ewell, and the heirs of James B. Wilson were made defendants. The heirs of Wilson claimed title to a portion of the land under George W. Ewell, by virtue of a sale and actual possession prior to the date of the mortgage to Daggs. The decree established their title, and from that there was no ap-. peal. .

As against George W. Ewell, however, it adjudged a foreclosure of the equity of redemption and sale of the remainder of the premises, in default of payment by him of the amount found due upon the judgment against James B. Ewell, and interest thereon at the rate of twelve per cent. per annum. From this decree George W. Ewell prosecuted this appeal.

*Mr. William Reynolds* for the appellant.—I. The court erred in overruling the defence of the Statute of Limitations. In Texas, unlike most States, the mortgage is only an incident . to the debt, and the mortgagor is the real owner, entitled to possession. *Duty* v. *Graham*, 12 Texas, 427; *Perkins* v. *Sterne*, 23 Texas, 561; *Blackwell* v. *Barnett*, 52 Texas, 326. Under the Texas Statute of Limitations the defence of George W. Ewell must be successful, unless the bringing of a suit against James B. stopped the running of the statute as to George W. That cannot be; because, in order to bind one by judgment in a suit to which he was not party, and by reason merely of priority in estate, he must have acquired his title *post litem motam*. *Doe* v. *Derby*, 1 A. & E. 783; *Hunt* v. *Haven*, 52 N. H. 162; *Winslow* v. *Grindal*, 2 Greenleaf, 64; *Adams* v. *Barnes*, 17 Mass. 365; *Burleson* v. *Burleson*, 28 Tex. 383. See *Lord* v. *Morris*, 18 Cal. 482, which holds that after

the mortgagor disposes of the premises his personal liability becomes separated from the ownership of the land, and he can by no subsequent act create or revive charges on the premises. —II. The Supreme Court of Texas has held that the Constitution repealing usury laws did not legalize usurious contracts of a date prior to its adoption. *Smith* v. *Glanton*, 39 Texas, 365. See also *Norris* v. *Crocker*, 13 How. 429 ; *Steamship Company* v. *Joliffe*, 2 Wall. 450 ; *Insurance Company* v. *Ritchie*, 5 Wall. 541 ; *Ex parte McCardle*, 7 Wall. 506 ; *Harris* v. *Runnels*, 12 How. 79 ; *National Exchange Bank* v. *Moore*, 2 Bond, 170.—III. There was error in the computation of interest. The contract upon which this judgment was founded, being the mortgage note, did *not* "bear a specified interest greater than 8 per cent. per annum, and not exceeding the highest rate of conventional interest permitted," and therefore the judgment should not bear 12 per cent. interest. See note as set out by appellee in his petition, and also as recited in mortgage.

*Mr. J. Randolph Tucker* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court. He recited the facts in the language in which they are set forth above, and continued :

. Several defences were made in the court below, the overruling of which are assigned for error, and which we proceed now to state and consider in their order.

1. The first defence is the Statute of Limitations, as contained in article 4604, Paschal's Digest, as follows :

"All actions of debt grounded upon any contract in writing shall be commenced and sued within four years next after the cause of such action or suit, and not after."

It is admitted that the cause of action upon the note was not barred when the action upon it was commenced, the period of limitation not expiring till July 29th, 1872, excluding from the computation the interval between January 28th, 1861, and March 30th, 1870, as required by article 12, section 43 of the Constitution of Texas of 1870.

But the statute quoted does not apply to suits for the fore-closure of a mortgage and sale of the mortgaged property, such as the present. Such suits are not actions of debt grounded upon a contract in writing. They are suits to en-force the lien of the mortgage for the satisfaction of the debt secured by it. If that debt is barred by the Statute of Limita-tions, then, according to the law in Texas the foreclosure suit is barred, but not otherwise; for the mortgage is a mere inci-dent to the debt. It was so held by the Supreme Court of Texas, in *Eborn* v. *Cannon's Adm'r*, 32 Texas, 231, where it says:

"If the notes were a subsisting debt at the time of the institu-tion of the suit, not barred by the Statute of Limitations, the mort-gage executed contemporaneously to secure their payment was still valid as long as the debt remained unsatisfied. No matter at what time the power of the court was invoked for its collection and foreclosure and for a decree to subject the mortgaged property to the satisfaction of the debt, it was opportune if the jurisdiction of the court over the debt itself was not ousted. The mortgage was but an incident of the debt, and the incident in law, as in logic, must abide the fate of the principal."

See also *Perkins* v. *Sterne*, 23 Texas, 561; *Duty* v. *Graham*, 12 Texas, 427; *Flanagan* v. *Cushman*, 48 Texas, 241.

There is no force in the suggestion that although the de-fence of the Statute of Limitations would not avail Jas. B. Ewell, because judgment had been rendered against him be-fore the bar took effect, it nevertheless is a protection to Geo. W. Ewell, because he is a stranger to the judgment and mort-gage, and the suit now pending was not brought till after the time limited for an action to recover the debt. For the present suit is not to recover the debt, nor is it a suit against Geo. W. Ewell. He is a party defendant, because he has an interest by a subsequent conveyance in the lands sought to be sold under the mortgage. He has an equity of redemption, which entitles him to prevent a foreclosure and sale by pay-ment of the mortgage debt; but the debt he has to pay is not his own, but that of Jas. B. Ewell. If he can show that that

debt no longer exists, because it has been barred by the Statute of Limitations, he is entitled to do so; but he must do it by showing that it is barred as between the parties to it.   If not, the land is still subject to the pledge, because the condition has not been performed.   It is not to the purpose for the appellant to show that he owes the debt no longer, for in fact he never owed it at all; but his land is subject to its payment as long as it exists as a debt against the mortgagor, for that was its condition when his title accrued.

2. The second defence is that of usury.   The statute of Texas on that subject has already been quoted.   A contract of loan at a stipulated rate of interest greater than twelve per cent. per annum, is declared to " be void and of no effect for whole premium or rate of interest only; " but the principal sum may be received and recovered.   The provision of the Constitution of Texas, sec. 44, art. 12, repealing this and all existing usury laws, is as follows:

" All usury laws are abolished in this State, and the legislature is forbidden from making laws limiting the parties to contracts in the amount of interest they may agree upon for loans of money or other property; *provided*, this section is not intended to change the provisions of law fixing the rate of interest in contracts where the rate is not specified."   2 Paschal's Annotated Digest Laws of Texas, 1132.

It is claimed by the appellant that, notwithstanding this repeal of the usury laws, the rights of the parties are to be determined according to the law in force at the time the transaction took place; that by the terms of that law the contract between Daggs and James B. Ewell was void as to the entire interest reserved and paid; that no subsequent law could make valid a contract originally void; and that the appellant is not bound by the judgment rendered against James B. Ewell in favor of Daggs, and is entitled in the present suit to make the defence.

It is quite true that the usury statute referred to declares the contract of loan, so far as the whole interest is concerned, to be " void and of no effect."   But these words are often used in

statutes and legal documents, such as deeds, leases, bonds, mortgages, and others, in the sense of voidable merely, that is, capable of being avoided, and not as meaning that the act or transaction is absolutely a nullity, as if it never had existed, incapable of giving rise to any rights or obligations under any circumstances. Thus we speak of conveyances void as to creditors, meaning that creditors may avoid them, but not others. Leases which contain a forfeiture of lessee's estate for non-payment of rent, or breach of other condition, declare that on the happening of the contingency the demise shall thereupon become null and void, meaning that the forfeiture may be enforced by re-entry, at the option of the lessor. It is sometimes said that a deed obtained by fraud is void, meaning that the party defrauded may, at his election, treat it as void.

All that can be meant by the term, according to any legal usage, is that a court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of carrying into effect that which is prohibited by the law of the land. Broom's Legal Maxims, 732.

And Lord Mansfield, in *Holman* v. *Johnson*, Cowp. 341, stated the ground on which, in such cases, courts proceed. He said:

"The principle of public policy is this : *ex dolo malo non oritur actio.*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating or otherwise, the cause of action appear to arise *ex turpi causa,* or the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff."

And the effect is the same, if the contract is in fact illegal, as made in violation of a statute, whether the statute declares it to be void or not. *Bank of United States* v. *Owens*, 2 Pet. 527. "There can be no civil right," said Mr. Justice Johnson, in that case, " when there can be no legal remedy ;

and there can be no legal remedy for that which is itself illegal."

A distinction is made between acts which are *mala in se*, which are generally regarded as absolutely void, in the sense that no right or claim can be derived from them; and acts which are *mala prohibita*, which are void or voidable, according to the nature and effect of the act prohibited. *Fletcher* v. *Stone*, 3 Pick. 250. It was accordingly held in Massachusetts that a mortgage or assurance given on a usurious consideration, was only voidable, notwithstanding the strong words of the statute. *Green* v. *Kemp*, 13 Mass. 515. And in such cases, the advance of the money, although the contract is illegal for usury, is a meritorious consideration, sufficient to support a subsequent liability or promise, when the positive bar of the statute has been removed. "A man by express promise may render himself liable to pay back money which he had received as a loan, though some positive rule of law or statute intervened at the time to prevent the transaction from constituting a legal debt." *Flight* v. *Reed*, 1 H. & C. 703; 32 Law Jour. Rep. N. S. Ex. 265.

The effect of the usury statute of Texas was to enable the party sued to resist a recovery against him of the interest which he had contracted to pay, and it was, in its nature, a penal statute inflicting upon the lender a loss and forfeiture to that extent. Such has been the general, if not uniform, construction placed upon such statutes. And it has been quite as generally decided that the repeal of such laws, without a saving clause, operated retrospectively, so as to cut off the defence for the future, even in actions upon contracts previously made. And such laws, operating with that effect, have been upheld, as against all objections on the ground that they deprived parties of vested rights, or impaired the obligation of contracts. The very point was so decided in the following cases: *Curtis* v. *Leavitt*, 15 N. Y. 9; *Savings Bank* v. *Allen*, 28 Conn. 97; *Welch* v. *Wadsworth*, 30 Conn. 149; *Andrews* v. *Russell*, 7 Blackf. 474; *Wood* v. *Kennedy*, 19 Ind. 68; *Town of Danville* v. *Pace*, 25 Grat. 1; *Parmelee* v. *Lawrence*, 48 Ill. 331; *Woodruff* v. *Scruggs*, 27 Ark. 26.

And these decisions rest upon solid ground.   Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is, that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains *in fieri*, and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away.   It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract.   The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur.   That principle has been repeatedly announced and acted upon by this court.   *Read* v. *Plattsmouth*, 107 U. S. 568; and see *Lewis* v. *McElvain*, 16 Ohio, 347; *Johnson* v. *Bentley*, Ib. 97; *Trustees* v. *McCaughy*, 2 Ohio State, 152; *Satterlee* v. *Mathewson*, 16 S. & R. 169; *S. C.* in error; 2 Pet. 380; *Watson* v. *Mercer*, 8 Pet. 88.

The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract, a naked legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect. Cooley Constitutional Limitations, 378, and cases cited.

The case of *Smith* v. *Glanton*, 39 Texas, 365, cited and relied on by counsel for the appellant, we cannot accept as a settlement of the law of Texas to the contrary.   The opinion does not consider the question, but dismisses it, on the assumption that the fact that the action was brought before the adoption of the Constitution which contained the repeal of the usury laws, prevented the application of the rule.

It is our opinion, therefore, that the defence of usury cannot avail the appellant, by reason of the constitutional repeal of the statute, on the continued existence of which alone his defence rested.

3. It is next objected that there is error in the amount of the

decree, in allowing interest at the rate of twelve per cent. per annum on the amount of the judgment against James B. Ewell, instead of finding the amount due, irrespective of the judgment, by calculating interest upon the note itself since its maturity, giving proper credits for payments, at the rate of eight per cent. per annum. The amount of the alleged error is $805.25, being the difference between $5,980.22, which is said to be the amount of the decree, and $5,174.97, which it is claimed is the true amount. The law of Texas provides that " on all written contracts ascertaining the sum payable, when no specified rate of interest- is agreed upon by the parties, interest shall be allowed at the rate of eight per cent. per annum from and after the time when the sum is due and payable." Paschal's Dig. of Laws, art. 3940; Rev. Stat. 1879, art. 2976; and also that " all judgments of the several courts of this State shall bear interest at the rate of eight per cent. per annum from and after the date of the judgment, except when the contract upon which the judgment is founded bears a specified interest greater than eight per cent. per annum, and not exceeding the highest rate of conventional interest permitted by law (twelve per cent.), in which case the judgment shall bear the same rate of interest specified in such contract and after the date of such judgment. Paschal's Dig., art. 3943; Rev. Stat. 1879, art. 2980.

The contract on which the judgment was founded stipulated for no rate of interest, the interest reserved being added to the principal in the note itself, and consequently it is evident that the decree should not have allowed interest on the debt at a rate greater than eight per cent. The amount of the decree should have been the sum actually due upon the mortgage debt at the date of its maturity, May 27th, 1859, with interest thereon at the rate of eight per cent. per annum to the time of the decree, April 25th, 1879, giving proper credit for payments made on account from time to time, which amounts to $5,174.97, and on which interest is to be allowed at the same rate until paid.

In our opinion, the appellant is entitled to have this correction made. He is not bound by the judgment against James

B. Ewell, to which he is neither party nor privy, and which was rendered after the appellant acquired his title to the land. He is consequently not cut off from his right to set up the matter, on which he now insists. *Lloyd* v. *Scott*, 4 Pet. 205; *Brolasky* v. *Miller*, 1 Stockt. (N. J.) 807; *Berdan* v. *Sedgwick*, 44 N. Y. 626; *Post* v. *Dart*, 8 Paige, 639; *Greene* v. *Tyler*, 39 Penn. St. 361.

*The decree is therefore modified in respect to the amount found to be due and the rate of interest to be allowed thereon, as already indicated, and with this modification, affirmed, each party paying his own costs in this court.*