339 So.2d 1355 (1976)
F.L. CAPPAERT
v.
Bernie B. BIERMAN and Geneva Ingram.
No. 48856.
Supreme Court of Mississippi.
October 5, 1976.
Rehearing Denied November 30, 1976.
*1356 Case, Montgomery & Smith-Vaniz, Canton, for appellant.
Henry, Barbour & DeCell, William H. Barbour, Jr., Yazoo City, Teller, Biedenharn & Rogers, Vicksburg, for appellees.
Before GILLESPIE, C.J., and ROBERTSON and LEE, JJ.
GILLESPIE, Chief Justice, for the Court:
Suit was filed in the Circuit Court of Warren County by F.L. Cappaert against Bernie B. Bierman on a note for $22,084. Bierman defended and counterclaimed, on the ground that the note sued on was a part of a usurious transaction. Trial without jury resulted in a judgment for Bierman on the note and awarding Bierman a judgment for $140,723.32 as usurious interest. Cappaert appealed.
In accordance with the established rule the facts are stated in the light most favorable to Bierman in whose favor the trial judge found.
Cappaert and Bierman negotiated a loan to be secured by real estate. In accordance with requirements of Cappaert, Bierman executed a note for $437,500, dated October 11, 1968, due on or before October 11, 1973, with seven percent interest payable semiannually. Cappaert withheld and never parted with $87,500 as a "compensating balance." Cappaert issued his check to Bierman and the closing attorney for $350,000, but required as a condition prior to disbursing the loan proceeds, that the closing attorney issue a check to Bierman, who would cash the check and deliver $17,500 of the $350,000 to Cappaert in cash. This was done and the balance of the loan proceeds were disbursed to Bierman. While Bierman only had the use of $332,500, he was responsible to repay Cappaert $350,000, plus the stipulated interest computed at seven percent on $437,500.
Semi-annual interest payments aggregating $123,233.32 were made. The loan was paid off in part on June 29, 1973. The amount demanded by Cappaert and paid by Bierman was $350,000 cash and a renewal note of $22,084, bearing interest from date until paid. This note was signed by Bierman and Geneva Ingram, but she is not a party to this appeal.

I.
What law and interest rate governs the transaction?
Mississippi Code Annotated section 75-17-1 (1972) established the maximum lawful interest at a rate of eight percent per annum. Section 75-17-1 was amended by Chapter 564, Laws of 1974 [now appearing as § 75-17-1, et seq.] and became effective July 1, 1974. Chapter 564 increased the legal rate of interest, for loans of this nature, to a maximum of ten percent per annum. The judgment appealed from was dated December 19, 1974. The trial judge was of the opinion that it was immaterial which law governed the transaction, because in his opinion the transaction was usurious under either law.
Section 7, Chapter 564, Laws of 1974 (now appearing as Mississippi Code Annotated section 75-17-17 [Supp. 1975]), states:

*1357 Loans made and credit extended prior to the effective date of this act shall continue to be governed by the provisions of laws governing such loans and extensions of credit which were in force at the time such loans or extensions of credit were made, including laws repealed hereby except that finance charges contracted for or received prior to the effective date of this act shall not be unlawful if the finance charge contracted for or received conforms with the provisions of this act or other law then in effect. Any loan or note renewed, refinanced, deferred or otherwise extended or altered on or after the effective date of this act shall conform with the provisions of this act. (Emphasis supplied).
We hold that the 1974 statute as written applies retroactively, and that the ten percent yield provided in that law should be applied to the present case in determining whether usury was stipulated for or received. See Deposit Guaranty Bank & Trust Co. v. Williams, 193 Miss. 432, 9 So.2d 638 (1942).

II.
Did Cappaert receive usurious interest?
Section 1 of Chapter 564, Laws of 1974 [now appearing as section 75-17-1(9) of Mississippi Code Annotated (Supp. 1975)], provides that if a greater finance charge than that stipulated by this section or any other applicable law shall be stipulated for or received in any case, all interest and finance charges shall be forfeited, and may be recovered back whether the contract be executed or executory. Finance charges are also described in section 1 of Chapter 564, as follows:
The term "finance charge" as used in this act means the amount or rate paid or payable, directly or indirectly, by a debtor for receiving a loan or incident to or as a condition of the extension of credit, including but not limited to interest, brokerage fees, finance charges, loan fees, discount, points, service charges, transaction charges, activity charges, carrying charges, finders fees, or any other cost or expense to the debtor... .
For purposes of our usury statutes the discount or finance charge of $17,500 must be considered as interest. Our usury statutes are consistent with the general rules of law in the area.
When a creditor exacts from a debtor, as a condition of a loan, a sum in addition to the lawful interest, whether designated as a bonus, commission, carrying charge, or by some other name, the transaction is tainted with usury unless the sum so exacted, when added to the stipulated interest, does not exceed interest at the maximum lawful rate on the principal sum of the loan. 45 Am.Jur.2d, Interest and Usury § 196 at 154-155 (1969).
The maximum lawful interest was ten percent per annum. Bierman received and used $332,500 for the period October 11, 1968, to June 29, 1973. Ten percent interest for this period would be $156,685.12. Thus the maximum that Cappaert could have lawfully received on June 29, 1973, was $332,500, plus the sum of $156,685.12, or a total sum of $489,185.12. The amount received by Cappaert consists of:

Semi-annual interest payments totaling .... $123,223.32
Cash paid, June 29, 1973 .................. $350,000.00
Renewal Note dated June 29, 1973 .......... $ 22,084.00
 ___________
Total Received ............................ $495,307.32
Less: Maximum Cappaert could lawfully
 receive ................................. $489,185.12
Amount received in excess of lawful
 interest ................................ $ 6,122.20

Bierman offered testimony of a certified public accountant who testified based on the foregoing figures that Cappaert received interest at the rate of 10.35% per annum.

III.
Was usurious interest stipulated for?
Applying the previously mentioned rules of law, the amount of interest "stipulated for" by Cappaert consists of:

*1358
7% per annum on $437,500 for five
 years .............................. $153,125.00
Discount or finance charge ........... $ 17,500.00
 ___________
Total Interest "Stipulated For" ...... $170,625.00
Less: Maximum Cappaert could have
 lawfully stipulated for (10% per
 annum on $332,500 for 5 years) ..... $166,250.00
 ___________
Amount stipulated for in excess of
 statutory maximum .................. $ 4,375.00

We conclude that Cappaert not only "received" but "Stipulated for" usurious interest.

IV.
After it is determined that Cappaert stipulated for and received usurious interest, it follows that Cappaert is entitled to return of principal only and all received above that amount, Bierman is entitled to recover.
The amount of the judgment below was $140,723.32, which figure is the result of the following computation:

Cappaert actually received: semi-annual
 interest payments .................... $123,223.32
Cash on June 29, 1973 .................. $350,000.00
Renewal note ........................... $ 22,084.00
 ___________
 Total ................................ $495,307.32
Less: Amount of principal Cappaert
 entitled to receive .................. $332,500.00
 ___________
Amount received above return of
 principal ............................ $162,807.32
Less: Note cancelled by Judgment ....... $ 22,084.00
 ___________
Amount of judgment ..................... $140,723.32

We are of the opinion that there is no merit to Cappaert's contention that the counterclaim of Bierman constituted a separate and distinct transaction. The $22,084 renewal note was clearly a part of the settlement on June 29, 1973. Nor is there any merit in the contention that the closing attorney was incompetent to testify. Both parties used the same attorney and all that he did was known to both parties.
After a careful study of all the propositions raised by Cappaert, we are of the opinion that the trial judge correctly decided the case. The judgment is affirmed.
AFFIRMED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.