43711. SOUTHERN GUARANTY CORPORATION et al.
v. DOYLE et al.
(353 SE2d 510)

BELL, Justice.

This case is here by way of certified question from the United State Court of Appeals for the Eleventh Circuit. See Rule 37 of the Supreme Court of Georgia; OCGA § 15-2-9; *Doyle v. Southern Guaranty Corp.,* 795 F2d 907 (11th Cir. 1986). It concerns the question whether certain laws relating to interest limits should be applied retroactively.

Appellee Doyle purchased a new mobile home from Family Homes Sales Center, Inc., pursuant to a retail installment sales contract dated January 25, 1983. The contract was assigned to appellant Southern Guaranty Corporation. Appellee Jimmy Wood purchased his mobile home on February 25, 1982, under a retail installment sales contract which was assigned to appellant Fort Wayne Mortgage Company.

Doyle and Wood (hereinafter the borrowers) subsequently sued Southern Guaranty Corporation and Fort Wayne Mortgage Company (hereinafter the lenders) under the Georgia Motor Vehicle Sales Finance Act (hereinafter GMVSFA), OCGA §§ 10-1-30 to 38. It is undisputed that both contracts involved here exceeded the maximum rate of interest (10% add-on) then allowed under OCGA § 10-1-33. The borrowers sought forfeiture of finance charges, plus penalties. OCGA § 10-1-38.

1. We will first discuss certain of the lenders' defenses which have been handled adversely to them by the Eleventh Circuit. Although our discussion is not necessary, strictly speaking, to a resolution of the question certified to this court, it will provide the reader with a

better understanding of the case.

The lenders defended in reliance, inter alia, on certain federal preemption statutes which exempt mobile home financing contracts from state usury laws if the contracts include consumer protections specified by the preemption statutes. There are three preemption statutes which are relevant here: the FHA,[1] the VA,[2] and section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (hereinafter DIDMCA).[3] However, none of these statutes exempts the lenders in the instant case from the financing limits of OCGA § 10-1-33.

Doyle's contract is an FHA-insured agreement; Woods is a VA-insured agreement. Doyle's and Wood's contracts do contain the necessary FHA and VA consumer protections, but the Eleventh Circuit has held that, notwithstanding the inclusion of those protections, the lenders cannot avail themselves of either preemption statute. The reason, according to the Eleventh Circuit, is that when our General Assembly amended OCGA § 10-1-33 in 1980 (raising the interest rate limit from 8% add-on to 10% add-on), it invoked other provisions of the FHA and VA preemption statutes which under certain circumstances permit the states to override the FHA and VA preemptions. See *Doyle v. Southern Guaranty Corp.*, supra, 795 F2d at 912-914.

The lenders' mobile home contracts also fall under DIDMCA, but it is undisputed that the contracts do not contain the consumer protections required by DIDMCA. Therefore, DIDMCA does not exempt those contracts from § 10-1-33.

2. For purposes of the certified question, the lenders' pertinent defense was that the 1983 amendment of OCGA § 7-4-3, effective March 31, 1983,[4] eliminated the causes of action of Doyle and Wood, even though they entered into their contracts before the amendment's effective date.

With regard to this defense, the Eleventh Circuit has certified the following question to us: "Whether [the 1983 amendment to OCGA § 7-4-3 (a)], which provides that OCGA § 10-1-33 shall not apply to retail installment contracts pertaining to any manufactured home with a cash sales price of more than $3,000.00, [which the contracts in question exceeded] operates retroactively so as to eliminate any cause of action a manufactured home purchaser may have acquired under OCGA § 10-1-38 by a transaction prior to the 1983 Act's effective date." *Doyle v. Southern Guaranty Corp.*, supra, 795 F2d at 915-916.

The Eleventh Circuit also added that we are free to consider

---

[1] 12 USC § 1735f-7.
[2] 38 USC § 1828.
[3] 12 USC § 1735f-7 note.
[4] See Ga. Laws 1983, p. 1146, § 2.

what effect, if any, a 1985 amendment to OCGA § 10-1-33, which added a new subsection (d), see 1985 Ga. Laws, pp. 698, 699, might have on the present case. *Doyle,* supra, 795 F2d at 916, fn. 20. New subsection (d) provides that notwithstanding subsection (a) of § 10-1-33, "a buyer and a seller may establish any finance charge agreed upon in writing by the parties where the amount financed is more than $5,000.00."

3. The lenders, relying on *Ward v. Hudco Loan Co.,* 254 Ga. 294 (328 SE2d 729) (1985); *Fountain v. Dixie Finance Corp.,* 252 Ga. 543 (314 SE2d 906) (1984); and *Southern Discount Co. v. Ector,* 246 Ga. 30 (268 SE2d 621) (1980), contend that the 1983 amendment to OCGA § 7-4-3 should be applied retroactively to defeat Doyle's and Wood's causes of action.

We agree with the lenders that the above cases establish a general rule that the repeal of usury limits should be construed liberally so as to give lenders relief if possible. This is so because forfeitures and penalties are not favored and because the defense of usury does not go to the merits of and is not a bargained-for-element of the contract, but is instead a privilege belonging to the remedy, given to the borrower by statute. *Ward v. Hudco Loan Co.,* supra, 254 Ga. at 297; *Fountain v. Dixie Finance Co.,* supra, 252 Ga. at 543-544; *Southern Discount Co. v. Ector,* supra, 246 Ga. at 30-31. The lenders, however, do acknowledge that the issue of retroactivity of laws is "at last and always a question of legislative intent." *Canton Textile Mills v. Lathem,* 253 Ga. 102, 103 (1) (317 SE2d 189) (1984).[5]

In the instant case, we find that there is a clear legislative intent that the 1983 amendment of OCGA § 7-4-3 (a) should not be applied retroactively. From the time the DIDMCA preemption became effective in 1980 until March 31, 1983, the effective date of the amendment of OCGA § 7-4-3 (a), two categories of lawful interest rates existed in Georgia. One was based on the 1980 amendment of OCGA § 10-1-33 setting the maximum lawful rate of interest at 10% add-on; under it a lender had to charge 10% add-on or less, but was not required to give the consumer protections required by DIDMCA. The other category was based on DIDMCA; under it a lender could charge in excess of 10% add-on if it provided the consumer protection benefits required by DIDMCA. If the consumer protections were not provided, then the lender would lose the DIDMCA preemption and

[5] We note that a savings clause is not a prerequisite to the prospective application of a law repealing a usury limit. Language to that is contained in a quote from *Ewell v. Daggs,* 108 U.S. 143, 150-151 (2 SC 408, 27 LE2d 682) (1983), first appearing in *Fountain v. Dixie Finance,* supra, 252 Ga. at 543-544. However, none of the cases by this court determining the retroactivity of the repeal of usury limits have turned on absence of a savings clause. See *Ward,* supra, 254 Ga.; *Fountain v. Dixie Finance,* supra; *Southern Discount Co. v. Ector,* 246 Ga., supra.

would be subject to the interest limits of OCGA § 10-1-33.

With the amendment of OCGA § 7-4-3 (a) in 1983 the General Assembly abolished the interest limits applying to mobile home loans in excess of $3,000. OCGA § 7-4-3 (a) (1). This removal of interest limits, however, was coupled with the requirement that lenders provide consumers the protections required by DIDMCA. OCGA § 7-4-3 (b) (1). Although the removal of the ceiling on interest rates was not, like DIDMCA, dependent upon compliance with the DIDMCA regulations (instead, noncompliance is sanctioned by the liability specified in § 7-4-5), "the legislature obviously intended for there to be a trade-off: in exchange for losing usury law protection, prospective borrowers would receive other consumer protections." *Doyle v. Southern Guaranty Corp.*, supra, 795 F2d at 915.

None of the previous cases relied on by the lenders dealt with legislation with such a trade-off. Moreover, we find this trade-off indicative of the legislative intent regarding the retroactivity *vel non* of the relevant provisions of the 1983 amendment to § 7-4-3. If we were to adopt the lenders' position and apply OCGA § 7-4-3 (a) (1), as amended in 1983, retroactively, a third category of permissible loan contracts would be created for the period preceding March 31, 1983. Under it a lender could charge in excess of 10% add-on for loans in excess of $3,000 and the consumer would not be entitled to the protections of DIDMCA. Obviously, the General Assembly, in amending § 7-4-3 in 1983, considered the DIDMCA protections important enough to require lenders to include them in mobile home contracts in excess of $3,000. Logically, the General Assembly would have considered the DIDMCA protections no less important during the period preceding March 31, 1983. It would therefore be unreasonable to conclude that the General Assembly intended to retroactively approve a class of loans with unlimited interest and no DIDMCA protections. Because we should not, in determining legislative intent, ascribe to the legislature an unreasonable intention, e.g., *City of Jesup v. Bennett*, 226 Ga. 606 (2) (176 SE2d 81) (1970), we conclude that the General Assembly intended for § 7-4-3 (a) (1) and (b) (1), as amended in 1983, to have prospective application only.

4. We next consider the lenders' argument that the new subsection (d) added to OCGA § 10-1-33 in 1985 should be applied retroactively to defeat the borrowers' causes of action. As previously noted, new subsection (d) of § 10-1-33 abolishes the interest limits for motor vehicle installment sales contracts in excess of $5,000, notwithstanding the limit provisions of § 10-1-33 (a). The lenders argue that since the removal of interest limits under new subsection (d) was not coupled with the grant of DIDMCA protections, no reason exists not to apply new subsection (d) retroactively. We disagree.

The provisions of the GMVSFA, of which § 10-1-33 is a part, ap-

ply to motor vehicles. The GMVSFA has been applied to mobile homes because of the judicial construction given to the definition of "motor vehicle" appearing at OCGA § 10-1-31 (a) (4). E.g., *Holder v. Brock*, 129 Ga. App. 732 (200 SE2d 912) (1973).

The General Assembly, however, by amending OCGA § 7-4-3 in 1983 created laws which specifically apply to *mobile home* retail installment contracts. As previously noted, OCGA § 7-4-3 (a) (1) removes the interest limit for mobile home installment sales contracts in excess of $3,000, while § 7-4-3 (b) (1) requires lenders for such contracts to grant consumers the protections of DIDMCA. Moreover, the 1983 amendment to § 7-4-3 distinguishes between mobile home contracts and motor vehicle contracts. The amendment abolishes the interest limit on *motor vehicle* loans in excess of $5,000, § 7-4-3 (a) (2),[6] and only extends the consumer protection of DIDMCA to mobile home installment sales contracts and not to motor vehicle installment sales contracts, § 7-4-3 (b) (1).

Since the General Assembly, beginning in 1983, has distinguished between mobile home loans and motor vehicle loans, and since §§ 7-4-3 (a) (1) and (b) (1), as amended in 1983, deal specifically with mobile home installment sales contracts, whereas § 10-1-33 (d), as amended in 1985, does not, we conclude that OCGA §§ 7-4-3 (a) (1) and (b) (1) express the controlling legislation and legislative intent on mobile home installment sales contracts in excess of $3,000. Moreover, we note that the retroactive application of new subsection (d) of OCGA § 10-1-33 to mobile home installment contracts would defeat the legislative intent, discussed in Division 3, supra, of the 1983 amendment of OCGA § 7-4-3, which couples the abolishing of interest limits on mobile homes with the granting of consumer protections. For the foregoing reasons, the lenders' reliance on § 10-1-33 (d), as amended, fails.

5. In addition to the foregoing, we conclude that OCGA § 10-1-36.1, added to GMVSFA in 1985, see Ga. Laws 1985 at 699, also expresses an intent by the General Assembly that neither the 1983 amendment of OCGA § 7-4-3, nor the addition of new subsection (d) to § 10-1-33 in 1985 (assuming it did apply to mobile home loans, see Division 4, supra) was intended to apply retroactively. OCGA § 10-1-36.1 (a) bars all class actions for violation of GMVSFA, but subsection (b) exempts from this bar all class actions involving mobile homes pending as of February 22, 1985. If the General Assembly had intended for either the 1983 amendment to § 7-4-3 or the 1985 addition of new subsection (d) to § 10-1-33 to apply retroactively, the in-

---

[6] We note that new subsection (d) of § 10-1-33, as enacted in 1985, is identical to § 7-4-3 (a) (2), as amended in 1983.

clusion of the exemption in OCGA § 10-1-36.1 for class actions pending on February 22, 1985, would have been unnecessary, for such class actions would have been abolished by the retroactive application of those laws.

6. For the reasons expressed above, we answer the certified question in the negative and conclude that new subsection (d) of § 10-1-33 is of no avail to the lenders.

*Certified Question Answered. All the Justices concur.*

DECIDED MARCH 12, 1987.

*Knox & Zacks, Wyckliffe A. Knox, Jr., Raymond G. Chadwick, Jr., Wildman, Harrold, Allen, Dixon & Branch, Susan L. Kupferberg, Douglas N. Campbell,* for appellants.

*Nixon, Yow, Waller & Capers, John B. Long, Hull, Towill, Norman & Barrett, David E. Hudson, Dye, Miller, Tucker & Everitt, Thomas W. Tucker,* for appellees.

*Hansell & Post, W. Rhett Tanner, Michael J. Templeton, Douglas N. Campbell, Laura E. Stevenson, Kenneth G. Levin,* amici curiae.