Richard ROPER, Administrator,
Plaintiff,

v.

CONSURVE, INC., d/b/a BankAmericard Center and Deposit Guaranty National Bank, Defendants.

Civ. A. No. J81-0508(W).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 15, 1990.

Toxey Hall Smith, Biloxi, Miss., W. Robert Wilson, Jr., Jackson, Miss., Robert P. Denniston, Frederick G. Helmsing, Mobile, Ala., for plaintiff.

Vardaman S. Dunn, William F. Goodman, Jr., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This is a class action suit brought pursuant to 28 U.S.C. § 1331. The named plaintiffs, two "BankAmericard" bank cardholders, sued the defendant national bank which issued the bank credit cards contending that certain charges made by defendant bank were usurious under the National Bank Act, 12 U.S.C. §§ 85 and 86. This case was appealed to the Fifth Circuit Court of Appeals, *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir.1978), and thereafter to the United States Supreme Court, *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), on a procedural issue relative to class certification. Subsequently, in an order dated November 10, 1980, this Court certified plaintiffs' class as:

All holders of bankamericard credit cards issued by Deposit Guaranty National Bank by whom finance charges were paid during the period between September 17, 1969, and January 7, 1974.

The parties have filed cross motions for partial summary judgment on the issue of defendants' liability under 12 U.S.C. §§ 85 and 86 of the National Bank Act, which incorporates by reference state usury laws.

Essentially, plaintiffs contend that defendants' finance charges to the consumer cardholders exceeded the eight percent (8%) per annum maximum amount of interest allowable under Mississippi law at the time. Defendants counter that under the "most favored lenders" doctrine and the retroactive application of § 75–17–1, et seq., Miss. Code Ann. (Supp.1975), defendants were entitled to the interest rate Mississippi afforded its most favored lender and, thus, not in violation of the usury laws as claimed by plaintiffs.

Having thoroughly considered the briefs and arguments of the parties and being fully advised in the premises, the Court finds for the defendants for the reasons that follow.

### INTEREST RATES CHARGED

On behalf of BankAmerica cardholders who paid finance charges during the period of September 17, 1969, to January 7, 1974, plaintiff cardholders brought this case against Deposit Guaranty National Bank and its wholly owned subsidiary, Consurve, Inc., d/b/a BankAmericard Center. In the normal sequence of the BankAmerica card's use, plaintiffs bought merchandise or services from merchants who had previously contracted with the bank to permit such credit purchases. The merchant would then sell the credit instrument to the bank at a discount. Thereafter, the bank billed the cardholder and charged interest on the unpaid balance, if the balance owed was not paid within a certain time frame. *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1109 (5th Cir.1978), affirmed 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427, rehearing denied 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980). The process for com-

putation of the charges to the credit card holders was described by the Fifth Circuit as follows:

> During the period in question, the bank made a monthly service charge of 1½% on the unpaid balance of each account. However, each customer was allowed 30 days within which to pay his account without any service charge; if payment was not received within that time, the computer added to the customer's next bill 1½% of the unpaid portion of the prior bill, which was shown as a new balance. *This is the charge contended to be usurious.* Thus, if a customer brought merchandise and the charge slip for this was received by the bank the day after a monthly bill had been mailed to him, he would not be billed for the new charge for almost 30 days and would then have 30 more days within which to make payment in full without incurring the service charge. On the other hand, an item might be received by the bank on the day before the new statement was prepared, yet the service charge for it would be computed on the same basis as if it were received at the beginning of the month. (When he received his bill, the customer might also elect to pay it in installments, in that case, the service charge was made on unpaid installments).
>
> About 35% of the bank's customers did not incur a service charge. For the 65% who did the rate was always 1½% on the unpaid balance; if the effective rate was computed based on the number of days from the date the bank received each charge until it was paid, that effective rate would vary for each customer each month. (Emphasis added).

*Roper, supra,* at 1109–1110.

The controversy between the parties evolves from plaintiffs' argument that under Mississippi law the maximum rate of interest which defendants could have legally charged bank cardholders was eight percent (8%) per annum. Inasmuch as defendants charged eighteen percent (18%) per annum, plaintiffs contend that defendants' rate was usurious. In opposition, defendants claim that it was entitled to charge 1½% monthly interest or finance charge (18% per annum) pursuant to the retroactive application of the 1974 amendment to the Mississippi interest statute, Miss.Code Ann. § 75–17–1, et seq. (Supp.1975). Additionally, defendants argue that under the "most favored lender doctrine," it is entitled to charge the maximum interest rate permitted by Mississippi for the state's most favored lender.

## STATE LAW

The rate of interest that a national bank may charge is ultimately a question of federal law, and the matter is governed by 12 U.S.C. § 85. *Fisher v. First National Bank of Omaha,* 548 F.2d 255 (8th Cir. 1977). By its own terms, 12 U.S.C. § 85 recites:

> § 85. Rate of interest on loans, discounts, and purchases. Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the *rate allowed by the laws of the State,* Territory or District *where the bank is located, or at a rate of 1 per centum* in excess of the discount rate on ninety-day commercial paper in effect at the *Federal reserve bank in the Federal reserve district where the bank is located, whichever may be greater, and no more, except where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing* in any such State under this chapter .... (Emphasis added).

■ Thus, section 85 plainly provides that a national bank may charge interest at the rate allowed by the laws of the state in which the bank is located. *Marquette National Bank of Minneapolis v. First of Omaha Service,* 439 U.S. 299, 99 S.Ct. 540, 54 5, 58 L.Ed.2d 534 (1978).

■ A determination of the rate of interest allowed by state law has been accomplished by reference to the state court's interpretation of the state's constitution

and statutes. *First National Bank in Mena v. Nowlin,* 509 F.2d 872, 876 (8th Cir.1975), citing *Citizens National Bank v. Donnell,* 195 U.S. 369, 374, 25 S.Ct. 49, 50, 49 L.Ed. 238 (1904). As such, 12 U.S.C. § 85 does not merely incorporate the numerical rates established by the state, but adopts and encompasses the entire body of case law interpreting the state's limitation of usury. *Nowlin,* 509 F.2d at 876.

Under § 75–17–1, et seq., Miss.Code Ann. (1972 and its supplement), each provision of the statute establishes a maximum interest rate for various types of loan or credit transactions. *Allied Chemical Corporation v. MacKay,* 695 F.2d 854, 857 (5th Cir.1983). Plaintiffs rely on the *Mississippi Code* of 1942, as amended, Section 36, Laws 1966, Chapter 317, Section 1, effective from and after passage (approved June 15, 1966), which stated that:

> The legal rate of interest on all notes, accounts and contracts shall be six percent (6%) per annum but contracts may be made, in writing, for a payment of a rate of interest as great as eight percent (8%) per annum.

Thus, plaintiffs contend that the 8% maximum contract rate of interest governs the entire 1969 to 1974 period involved in this litigation. To the contrary, defendants rely on Paragraph (6) of § 75–17–1, Miss.Code Ann. (Supp.1975), which establishes the maximum interest rate for extensions of credit that are incidental to retail sales. *Allied Chemical,* 695 F.2d at 857. Paragraph (6) of the 1974 amendment to the Mississippi interest rate statute, Chapter 564, Laws of 1974 (now appearing as § 75–17–1, et seq.), provides:

> (6) Notwithstanding the foregoing and any other provision of law to the contrary, any retail seller, and any lender or issuer of credit cards may lawfully contract for and receive a finance charge for credit sales of goods, services or merchandise certificates or for cash advanced or other credit extended pursuant to a revolving charge agreement by applying a periodic rate no greater than one and one half percent (1½%) per month to:

> (a) the average daily balance of the account, exclusive of finance charge, in each billing period;

> (b) an amount that shall not exceed the balance of the account exclusive of the finance charge, on the first day of each billing period without adding purchases or miscellaneous debits to the account during the billing period; or

> (c) any balance of the account during each billing period which does not produce an amount of finance charge in excess of that permitted by (a) or (b). Notwithstanding the foregoing, the maximum finance charge which may be charged or collected on any balance in excess of Eight Hundred Dollars ($800.00) shall be determined by applying a periodic rate no greater than one and one quarter percent (1¼%) per month to that portion of the applicable balance which is in excess of Eight Hundred Dollars ($800.00) but not greater than Twelve Hundred Dollars ($1,200.00) and by applying a periodic rate not greater than one percent (1%) of the principal balance which exceeds Twelve Hundred Dollars ($1,200.00) ....

Additionally, Paragraph (9) defines finance charge in the 1974 amendment:

> (9) The term "finance charge" ... means the amount of rate paid or payable, directly or indirectly, by a debtor for receiving a loan or incident to or as a condition of the extension of credit, including but not limited to interest, ... finance charges, ... discount, ... service charges, transaction charges, activity charges, carrying charges ... or any other cost or expense to the debtor for services rendered or to be rendered .... A licensee under the Small Loan Regulatory Act ... and the Small Loan Privilege Tax Law ... may contract for and receive finance charges as authorized by paragraph (7) hereof regardless of the purpose for which the loan or other extension of credit is made.

Finally, defendants argue that the retroactive application of Chapter 564, Laws of 1974 [which appeared as section 75–17–1, et seq., (Supp.1975)] brings the interest rates

charged within the provisions of the statutes so as to defeat the contentions that the charges by defendants were usurious.

Supportive of its argument of retroactivity, defendants cite the Mississippi Supreme Court's ruling in *Cappaert v. Bierman*, 339 So.2d 1355, 1357 (Miss.1976), that the 1974 amendment to the interest rate statute applied retroactively.

In *Cappaert*, plaintiff brought suit against a defendant on the ground that the note sued on was part of a usurious transaction. The Court stated:

Mississippi Code Annotated section 75–17–1 (1972) established the maximum lawful interest at a rate of eight percent per annum. Section 75–17–1 was amended by Chapter 564, Laws of 1974 [now appearing as § 75–17–1, et seq.] and became effective July 1, 1974. Chapter 564 increased the legal rate of interest, for loans of this nature, to a maximum of ten percent per annum. The judgment appealed from was dated December 19, 1974. The trial judge was of the opinion that it was immaterial which law governed the transaction, because in his opinion the transaction was usurious under either law.

Section 7, Chapter 564, Laws of 1974 [now appearing as Mississippi Code Annotated section 75–17–17 (Supp.1975)], states:

Loans made and credit extended prior to the effective date of this act shall continue to be governed by the provisions of laws governing such loans and extensions of credit which were in force at the time such loans or extensions of credit were made, including laws repealed hereby *except that finance charges contracted for or received prior to the effective date of this act shall not be unlawful if the finance charge contracted for or received conforms with the provisions of this act or other law then in effect.* Any loan or note renewed, refinanced, deferred or otherwise extended or altered on or after the effective date of this act shall conform with the provisions of this act. (Emphasis supplied in the original).

We hold that the 1974 statute as written applies retroactively, and that the ten percent yield provided in that law should be applied to the present case in determining whether usury was stipulated for or received.

*Cappaert*, 339 So.2d at 1357.

Defendants also cite a Tennessee district court's ruling to corroborate its contention that the interest rate charged was not usurious because of the retroactive application of § 75–17–1, et seq., Miss.Code Ann. (Supp.1975). *Walters v. First National Bank of Memphis*, No. 74–267–M (W.D. Tenn., June 12, 1985). In *Walters*, plaintiff, a Mississippi resident and BankAmericard bank cardholder, filed an action seeking damages pursuant to 12 U.S.C. §§ 85 and 86 alleging that interest charged was usurious under Tennessee law. Ruling that Mississippi law applied, the Tennessee Court held that the charges were not usurious under the usury statutes of either Mississippi or Tennessee. Citing § 75–17–17, Miss.Code Ann. (Supp.1975), the Tennessee court stated:

The disputed transactions were, according to defendant, tailored to fit the law of Mississippi at the time. Whether or not this is true is irrelevant since the retroactivity provision brings the charges here squarely within the law .... Finally, while plaintiff is correct in asserting that federal law controls in cases concerning national banks, 12 U.S.C. §§ 85 and 86, both incorporate by reference state usury laws. Thus, the federal rates are keyed to the state rates and must change as the respective states see fit, even retroactively. Federal law has long recognized that the retroactive lifting of usury limits is permissible since usury laws are generally remedial, rather than substantive. *Ewell v. Daggs*, 108 U.S. 143 [2 S.Ct. 408, 27 L.Ed. 682] (1883). The fact that 12 U.S.C. § 86 provides a penalty for the violation of a usury limit does not in any way unhinge it from state usury laws. To rule otherwise would place national banks on an unequal footing with state banks, contrary to the intent of the drafters of the National Bank Act. *See, Tiffany v. Na-*

*tional Bank of Missouri,* 18 Wall. 409 [21 L.Ed. 862] (1874).

*Walters, supra,* at 5–8.

Thus, defendants' primary position is that the *Cappaert* ruling of the retroactivity of § 75–17–1, et seq., must be applied to defendant national bank so as to place it on an equal basis with all other lenders of credit in Mississippi in the spirit of the "most favored lender doctrine" espoused under 12 U.S.C. § 85 of the National Bank Act. Plaintiffs do not dispute that *Cappaert* expressly upholds the retroactive application of § 75–17–1, et seq., Miss.Code Ann. (Supp.1975), but argues that such retroactive application is contra to the dictates of the federal savings statute, 1 U.S.C. § 109.

Section 109 of Title 1 of the United States Code provides that the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under the repealed statute *unless the repealing Act expressly provides* and that the repealed statute shall be treated as still in force for a proper action or prosecuting for the enforcement of such penalty, forfeiture, or liability.

The federal Act pertaining to this case adopts not only the numerical interest rates set by state statute, but also the entire case law of the state interpreting the state's limitations on usury. *First National Bank In Mena v. Nowlin, supra,* at page 876, 12 U.S.C. § 85. Mississippi law has expressly stated that newly enacted statutes, with no saving clause specifically included in any repealed or modified statutes extinguished any accrued right in the usury statute. *Deposit Guaranty Bank & Trust Co. v. Williams,* 193 Miss. 432, 9 So.2d 638 (Miss.1942). The Mississippi Supreme Court stated:

> Many decisions in this state have affirmed the rule, which generally prevails, that the effect of a repealed statute is to abrogate the repealed statute as completely as if it had never been passed, and that a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause. (Citations omitted).

> The result of this rule is that every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute unless carried to final judgment before the repeal or modification,—save that no such repeal or modification shall be permitted to impair the obligation of a contract or abrogate a vested right .... Rights of action or defenses on account of usury are not a part of the common law. They are solely the creations of statute, and such statutes are in the nature of regulations in the public interest. Although a right conferred solely by statute in the public interest may have accrued before the repeal or modification, it does not follow that the accrued right in such cases is a vested right, in the constitutional sense. There is no vested right in the usury laws which, therefore, may be repealed or changed so as to affect causes of action and defenses even in pending suits. 12 C.J., p. 974; 16 C.J.S., Constitutional Law, § 254. By the great weight of authority, the legislature may repeal a usury law and no one has any vested right to take advantage of such laws. 12 Am.Jur. p. 65.

*Deposit Guaranty Bank & Trust Co. v. Williams,* 9 So.2d at 640.

Similarly, the United States Supreme Court has held that the repeal of a usury law, without a savings clause, operated retrospectively to cut off the defense for the future, even in actions on contracts previously made, thereby rejecting all arguments of deprivation of vested rights or impairment of the obligation of contract. *Ewell v. Daggs,* 108 U.S. 143, 151, 2 S.Ct. 408, 413, 27 L.Ed. 682 (1883).

Consequently, the Court finds no conflict between 1 U.S.C. § 109, a federal savings statute, and the retroactive application of Miss.Code Ann. § 75–17–1 (Supp.1975). Section 109 of Title 1 of the United States Code is applicable to the repeal of any federal statute. This in no way imposes a

restriction upon the power of a state to repeal, modify, or make retroactive its usury statute merely because 12 U.S.C. § 85 adopts the maximum rate of interest allowable by the state.

## "MOST FAVORED LENDER" DOCTRINE

Derivative of 12 U.S.C. § 85 the "most favored lender" doctrine, was first established in *Tiffany v. The National Bank of the State of Missouri*, 18 Wall. 409, 85 U.S. 409, 21 L.Ed. 862 (1873). In *Tiffany*, the United States Supreme Court held that national banks were authorized under 12 U.S.C. § 85 to charge interest at the maximum rate permitted by state law for the state's most favored lender. *Tiffany*, 18 Wall. at 411. *Tiffany* resolved the issue of whether the 30th section of the act of Congress of June 3, 1864 (presently 12 U.S.C. § 85), prohibited national banking associations in the State of Missouri from charging a greater rate of interest than eight percent (8%) which was the rate limited by the laws of the state for banks organized under its laws. *Id.* at 410. Finding that the State of Missouri allowed all persons, except banks organized under the state laws, to charge ten percent (10%) per annum as interest, the Court held that defendant Bank of Missouri charges of nine percent (9%) on loans made were not usurious. Thus, reasoning that national banks were not restricted to the rate allowed to banks of the state where a greater rate was allowed to individual lenders generally, the Court stated:

> It cannot be doubted, in view of the purpose of Congress in providing for the organization of national banking associations, that it was intended to give them a firm footing in the different states where they might be located. It was expected they would come into competition with state banks, and it was intended to give them at least equal advantages in such competition. In order to accomplish this they were empowered to reserve interest at the same rates, whatever those rates might be, which were allowed to similar state institutions. This was considered indispensable to protect them against possible unfriendly legislation ... unfriendly legislation might make their existence in the state impossible .... The only mode of guarding against such contingencies was that which, we think, Congress adopted. It was to allow national associations the rate allowed by the state to natural persons generally, and a higher rate, if state banks of issue were authorized to charge a higher rate. This construction accords with the purpose of Congress, and carries it out .... National banks have been national favorites .... In harmony with this policy is the construction we think should be given to the 30th section of the Act of Congress we have been considering. It gives advantages to national banks over their state competitors .... The result of this is that the defendants in receiving nine percent interest upon the loans made by them have not transgressed the Act of Congress and consequently they are under no liability of the plaintiff.

*Tiffany, supra,* at 412–413.

It is defendants' contention that the *Tiffany* ruling, 12 U.S.C. § 85 of the National Bank Act, accorded national banks the right to charge the interest rate afforded state competitors, whether such competitors were state banks or non-bank lenders. *Northway Lanes v. Hackley Union National Bank & Trust Co.*, 464 F.2d 855 (6th Cir.1972).[1]

In 1974, the Mississippi Legislature, pursuant to House Bill No. 819, Chapter 564, amended the state's usury statute, Miss.

---

**1.** The "most favored lender" status for national banks under *Tiffany* has since been incorporated into the regulations of the Comptroller of Currency. *See* 12 C.F.R. § 7.7310(a) which recites:

(a) A national bank may charge interest at the maximum rate permitted by State law to any competing State-chartered or licensed lending institution. If State law permits a higher interest rate on a specified class of loans, a national bank making such loans at such higher rate is subject only to the provisions of State law relating to such class of loans that are material to the determination of the interest rate.

Code Ann. § 75–17–1 (Supp.1975). The preamble to the Act recites that it is:

> AN ACT to simplify and modernize the laws governing the lending of money, usury, extending credit, and the making of credit sales; to protect consumers against unfair practices by suppliers of credit and to provide rate ceilings; to permit and encourage the development of sound consumer credit practices and to insure an adequate supply of credit.

Section 75–17–1 was amended to permit rates of interest on all notes, accounts, and contracts of six percent (6%) except that contracts could be made in writing for payment of finance charges as otherwise provided by the Act. Miss.Code Ann. § 75–17–1 (Supp.1975). Section 75–17–1(2) permitted any borrower to contract for payment of a finance charge of ten percent (10%) per annum for any loan or other extension of credit made directly or indirectly to the borrower. The amendment also provides that domestic or foreign corporations and non-profit corporations organized to own, operate, or finance an educational facility could agree to pay any rate of finance charge in excess of the maximum rate provided under § 75–17–1, but not to exceed fifteen percent (15%) per annum on any contract or other obligation under which the principal balance to be repaid exceeded $2,500.00. Miss.Code Ann. § 75–17–1(2), (3) (1975 Supp.). Section 75–17–1(6) under the Act provided that *any lender or issuer of credit cards may lawfully contract and receive a finance charge from one percent (1%) to one and one half percent (1½%) per month.* For any loan or extension of credit made by a licensee under the Small Loan Regulatory Act and Small Loan Privilege Tax Law, the Act provided that the licensee could contract for and receive finance charges from twelve percent (12%) to thirty-six percent (36%) per annum depending on balances to be repaid. § 75–17–1(7)(a)–(d). The retroactive provision of the Act provided loans made or credit extended prior to the Act's effective date, July 1, 1974, would be governed by the laws in force at the time such loans or credit were extended *except that finance charges contracted for or received prior to the Act's effective date would not be unlawful if the finance charge complied with the provisions of the Act or other law then in effect.* Chapter 564, Laws of 1974 [now appearing as section 75–17–17 (Supp.1989)].

## CONCLUSION

Inasmuch as Mississippi's usury statute is highly penal in nature, it must be strictly construed in favor of the creditor. *Allied Chemical Corp. v. McKay*, 695 F.2d 854, 857 (5th Cir.1983). Accordingly, the court is of the opinion that the retroactive application of Mississippi's 1974 amendment to its usury statute, *Cappaert v. Bierman*, 339 So.2d 1355 (Miss.1976), and the application of the most favored lender doctrine pursuant to the retroactive statute, *see, Tiffany*, 18 Wall. 409, entitled the defendants to lawfully charge a maximum interest rate of one and one-half percent per month on unpaid credit card balances. This determination disposes of the question of usury. However, the defendants alternatively contend, pursuant to the most favored lender doctrine and Mississippi's 1958 Small Loan Act, that a national bank could lawfully charge twelve (12) percent to thirty-six (36) percent per annum on unpaid credit card balances. In light of the court's determination that the defendants did not engage in usurious practices, it is not necessary to dispose of this issue. However, in passing, the court has considered the recent Mississippi Supreme Court decision in *Denley v. Peoples Bank of Indianola*, 553 So.2d 494 (Miss.1989), with regard to the defendants' contention that they were entitled to claim most favored lender status under the 1958 Small Loan Act. The Mississippi Supreme Court quoted a recent statement of Comptroller of the Currency regarding the most favored lender doctrine:

> A national bank may charge interest at the maximum rate permitted by State law to any *competing* State-chartered or licensed lending institution. If State law permits a higher interest rate on a specific class of loans, a national bank making such loans at such higher rate is subject

**516**

only to the provisions of State law relating to such class loans that are material to the determination of the interest rate. For example, a national bank may lawfully charge the highest rate permitted to be charged by a State-licensed small loan company or Morris plan bank, without being so licensed. (Citations omitted).

\*　　\*　　\*　　\*　　\*　　\*

Bank and Amici misread the (most favored lender) doctrine to provide that if any lender in the state may engage in a practice regarding interest rates or finance charges, a bank covered by the doctrine may seize upon the state authority and employ it across the board even to credits in no way of the class covered by the state enactment and notwithstanding that any state-chartered competitors are prohibited the rates.

553 So.2d at pages 503, 504.

This court is not prepared to rule that small loans and credit card charges are the same class of credits. Moreover, the plaintiffs do not assert that the defendants' alleged usury occurred in connection with small loan transactions. The court sees the 1958 Small Loan Act question as a separate issue unrelated to the allegations of credit card usury in this case.

■ Finally, the defendants' claim to be absolved of usury pursuant to the combined mandates of the time-price doctrine and the most favored lender doctrine. A solidly embedded principle of Mississippi law, the time-price doctrine has been explained by the Mississippi Supreme Court as follows:

> Where property is sold on credit, the fact that the difference between the credit price and the cash price exceeds the percentage permitted by the usury laws will not render a transaction usurious if the parties acted in good faith. A vendor may fix on his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cost price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties but not to the courts, barring evidence of bad faith. If the parties have acted in good faith, such a transaction is not a loan, and not usurious.

■ The Court is of the opinion that the time-price differential or the time-price doctrine is inapplicable to the case *sub judice*. A review of Mississippi case law sustaining the doctrine reveals that the doctrine has exclusively been applied to installment sales contracts for a fixed term of repayment. The differential between the cash price quoted to a consumer and the credit price selected by the consumer was not considered interest by the Mississippi Supreme Court. *Mullins v. Merchandise Sales Company*, 192 So.2d 700, 704 (Miss. 1966); *Bryant v. Securities Investment Company*, 102 So.2d 701, 702 (Miss.1958).

Thus, the court finds that the 1974 amendment to Miss.Code Ann. § 75–17–1, *et seq.*, applies retroactively to preclude the plaintiffs' usury claims. The court further finds that the time-price doctrine does not apply to the circumstances of this case.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion of the plaintiffs for partial summary judgment is hereby denied, and the motion of the defendants for summary judgment is hereby granted in accordance with this opinion. A separate judgment shall be entered in accordance with the local rules.

SO ORDERED.